## S04A0785. IVEY v. THE STATE.
(596 SE2d 612)

THOMPSON, Justice.

John Alvin Ivey was found guilty by a jury of malice murder and various other offenses, in connection with the armed robbery of a Hardee's restaurant, and the shooting death of its manager, Robert Ellis.[1] Ivey appeals from the denial of his motion for new trial, raising a *Batson*[2] claim, and challenging several evidentiary rulings of the trial court. Finding no error, we affirm.

Ivey, along with accomplices Ellis Dukes, Jr., Travis Quarterman, and Mark Dewayne Rozier, devised a plan to rob a Hardee's restaurant where Quarterman was employed. Earlier on the evening of the robbery, Ivey told a friend that he was going to "hit" the Hardee's, and he asked the friend to accompany him; Ivey had a silver .32 caliber handgun with him. The friend declined.

Later that night, Ivey, Dukes, and Rozier drove to the restaurant. Ivey, wearing a ski mask and wielding a gun, entered the restaurant and jumped over the counter, forcing Ellis to the back of the store where he fatally shot him in the head.[3] There were two other employees in the store at the time as well as two customers; all were held at gunpoint. Ivey demanded that the other employees open the safe and cash register. Employee Kelly Ellison handed Ivey the contents of the cash registers, which amounted to $89. Ivey replied, "I actually killed a man on this right here," whereupon the perpetrators fled from the scene.

---

[1] The shooting took place on May 30, 1996. An indictment was returned on June 14, 1996, charging Ivey with malice murder, felony murder, five counts of aggravated assault, armed robbery, kidnapping, and possession of a firearm while in the commission of a felony. On October 29, 1996, a jury found Ivey guilty of all counts. He was sentenced on November 7, 1996 to life imprisonment for the malice murder; a consecutive term of life imprisonment for the armed robbery; four consecutive terms of 20 years for four armed robbery convictions; a consecutive term of 20 years for kidnapping; and a consecutive term of five years for the weapons offense. A motion for new trial was filed on November 21, 1996, amended on December 14, 1998, and denied on May 19, 2000. An out of time appeal was granted on September 16, 2002, and a notice of appeal was filed on October 1, 2002. The case was docketed in this Court on January 14, 2004, and was submitted for a decision on the briefs on March 8, 2004.

[2] See *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[3] Ivey was tried along with co-defendant Dukes. Rozier and Quarterman pled guilty and testified for the State at the joint trial. Dukes' conviction was affirmed on appeal. *Dukes v. State,* 273 Ga. 890 (548 SE2d 328) (2001).

The following day, Ivey told a friend that he shot the victim in the head because the victim did not know the combination to the restaurant safe. Ivey and co-defendant Dukes fled to Ashburn, Georgia, where they were apprehended and charged with the crimes.

1. The evidence was sufficient for a rational trier of fact to find Ivey guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The *Batson* claim asserted herein was considered and rejected by this Court in the appeal of Ivey's co-defendant Dukes. In *Dukes*, supra at 891 (2), we held that the reasons given by the State for the exercise of its peremptory strikes were sufficiently race-neutral to pass constitutional muster. We affirm that holding in this case.

3. In a pretrial motion to suppress, Ivey sought to exclude from evidence a photographic identification of him by employee Ellison on the basis the identification procedure was unduly suggestive. It was established at an evidentiary hearing that Ellison viewed Ivey's face at a time when he had removed his mask; that Ellison was shown a series of six photographs; and that she identified Ivey as the man who took the manager to the rear of the store and shot him. The trial court denied the motion to suppress and the evidence was admitted at trial.

On appeal, Ivey asserts that the procedure was impermissibly suggestive because the background shading of Ivey's photograph was different than the others, and because the officer asked Ellison "if one of the guys [pictured] is the one that went over the counter." In denying the motion to suppress, the trial court observed that the backgrounds of each of the six photographs were shaded differently; therefore, the lineup was not suggestive as to any one photograph. Our review of the record reveals no abuse of the trial court's discretion in that ruling, as Ivey "failed to demonstrate how the background color of his photograph made him stand out from the other lineup participants in an arbitrary or apparent way so as to be 'suggestive.'" *Evans v. State*, 261 Ga. App. 22, 23 (1) (a) (581 SE2d 676) (2003). Accord *Williams v. State*, 275 Ga. 622 (2) (571 SE2d 385) (2002).

As for the question posed to Ellison, the court determined that the officer was authorized to ask the witness if she saw one of the perpetrators in the lineup. "An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator or is the equivalent of the authorities telling the witness, 'This is our suspect.'" (Citation and punctuation omitted.) *Williams v. State*, supra at 623 (2). See also *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972). Although we observe that it would have been preferable for the

investigating officer to give the witness the standard admonition that the lineup may or may not contain a picture of the perpetrator, see generally *Parker v. State*, 244 Ga. App. 419 (9) (535 SE2d 795) (2000), the question posed here did not lead to the inevitable identification of Ivey as the perpetrator. Accordingly, we find no abuse of the court's discretion in refusing to suppress the photographic lineup. *Williams*, supra.

4. Ivey asserts that the trial court erred in allowing an in-court identification of him by another employee victim.

The evidence established that Omega Nash was a cook at Hardee's on the night in question. Nash was working at the grill when he observed a man in a ski mask push the manager to the back of the restaurant at gunpoint. Nash hid in a storage area from where he could observe the masked perpetrator attempting to open the safe and disable the video equipment. At one point the perpetrator partially removed his mask exposing his face, and Nash was able to view him in profile for about 30 seconds under good lighting conditions. Nash was not asked to identify Ivey during his direct testimony. But after a brief recess, the State recalled Nash for that purpose, over objection by the defense. The court conducted a hearing outside the presence of the jury, and allowed the in-court identification.

Nash identified Ivey as the armed attacker, explaining that he had observed distinctive scars on the right side of Ivey's face which enabled him to make the in-court identification.

(a) We find no abuse of discretion in allowing the State to recall its witness for further direct testimony. A trial judge has broad discretion to allow the recall of a witness. See *Watkins v. State*, 253 Ga. App. 382 (1) (559 SE2d 133) (2002). Here, Nash had not yet been excused and had just testified. Id.

(b) To the extent Ivey argues that the in-court identification was in some way unreliable under *Neil v. Biggers*, supra, "[t]his argument misses the mark. The 'totality of the circumstances' test for reliability of *Neil v. Biggers* applies to extra-judicial pretrial identification procedures such as lineups, showups and photographic displays, not to the in-court procedures used in this case." *Ralston v. State*, 251 Ga. 682, 683 (2) (309 SE2d 135) (1983). Nash's in-court identification "is subject to the same rules of evidence, witness credibility, and cross-examination as all testimony in a criminal trial." Id. The defense conducted a thorough cross-examination in an attempt to discredit Nash's identification. We find no error.

(c) Nash testified that he was unable to identify Ivey from a photographic lineup because the photographs shown to him were dark and blurry. Ivey contends that this omission in some way invalidates his in-court identification. "A witness' failure to make a pretrial identification of the accused is not grounds for striking a subsequent in-

court identification. A lineup identification, or identification from a group of photographs, is not a prerequisite to every in-court identification." (Citation and punctuation omitted.) *Ralston*, supra at 684.

5. Ivey's assertion that the police conducted a custodial interrogation in the absence of *Miranda* warnings is belied by the record. Ivey received *Miranda* warnings and then elected to make a statement to the investigating officers. Initially he denied any involvement in the crimes, but later admitted to being there, and he identified Rozier as the shooter. The trial court did not err in denying Ivey's motion to suppress his custodial statements due to the absence of *Miranda* warnings.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 24, 2004.

*Victor A. McLemore*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.