S05A0798. ESCOBAR v. THE STATE.
(620 SE2d 812)

SEARS, Chief Justice.

The appellant, Manuel Escobar, appeals from his convictions for the murder of Javier Olazaba; for the armed robbery of Olazaba, Francisco Trejo, and Jose Guardado; and for the possession of a firearm during the commission of a felony.[1] On appeal, Escobar contends, among other things, that the trial court erred in permitting Trejo and Guardado to testify about their out-of-court and in-court identifications of Escobar. We conclude, however, that the trial court did not err in failing to suppress the identifications. Because the other issues raised by Escobar are either procedurally barred or without merit, we affirm his convictions.

---

[1] The crimes occurred on April 21, 2001, and Escobar was indicted on July 25, 2001. Following a trial by jury, Escobar was found guilty of all counts of the indictment on October 29, 2003. That same day, the trial court sentenced Escobar to life in prison for malice murder; to a consecutive life sentence for the armed robbery of Olazaba; to life in prison for the armed robberies of Trejo and Guardado, to be served consecutively to the life sentence for murder but concurrent to the life sentence for the armed robbery of Olazaba; and to five years in prison for the possession offense, to be served consecutively to the life sentence for the armed robbery of Olazaba. A felony murder conviction was vacated by operation of law, and the trial court merged aggravated assault convictions of Trejo and Guardado with the armed robbery convictions for those victims. Escobar's trial counsel filed a motion for new trial on November 3, 2003. Escobar subsequently obtained new counsel for appeal, and that attorney filed an amended motion for new trial on October 15, 2004. The trial court denied the motion for new trial, as amended, on October 19, 2004. Escobar filed a notice of appeal on November 12, 2004, and the appeal was docketed in this Court on January 25, 2005. The appeal was orally argued on April 12, 2005.

1. The evidence would have authorized a rational trier of fact to find that Escobar and two companions went to a local brothel for the purpose of robbing people that they found there, and that, in the process of robbing Olazaba, Trejo, and Guardado, Escobar and his companions shot the three victims, killing Olazaba. Trejo and Guardado survived their injuries, and testified against Escobar at trial. Guardado testified that, when he arrived at the brothel, he sat on a sofa in a waiting room. He added that Trejo and Olazaba were there, and that, about five minutes after he arrived, Escobar and two companions arrived. Guardado testified that Escobar and his companions, who were not wearing masks, sat in the waiting room for about five minutes before they pulled out guns and told everyone to lie face down on the floor. Guardado added that one of the handguns had a laser on it, that Escobar had that gun, and that Escobar did most of the talking for the assailants. After the assailants took the victims' wallets, the assailants shot the victims. Trejo gave testimony substantially similar to that given by Guardado.

When the police subsequently searched Escobar's apartment, they discovered a .380 caliber pistol with an attached laser sight. A state firearm's expert testified that a .380 caliber shell casing found at the crime scene was fired from the pistol found in Escobar's apartment. The firearm's expert also testified that a bullet extracted from Olazaba's head was possibly fired from Escobar's pistol, but that the bullet had been too badly damaged to state with 100 percent certainty that there was a match.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Escobar guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Escobar contends that the trial court erred by permitting Trejo and Guardado to testify about their out-of-court and in-court identifications of Escobar. For the reasons that follow, we disagree.

To begin, the record does not show any impermissible suggestiveness in Guardado's out-of-court identification of Escobar, as the evidence shows that Guardado picked Escobar's photograph from a group of approximately a hundred photographs.[3] Moreover, as there was no impermissible suggestiveness in Guardado's out-of-court

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Ivey v. State*, 277 Ga. 875, 876 (596 SE2d 612) (2004) (" 'An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator or is the equivalent of the authorities telling the witness, "This is our suspect." ' ").

identification of Escobar, Guardado's in-court identification was not subject to suppression, but was simply a matter of cross-examination.[4]

As for Trejo's identification of Escobar, we conclude that, even assuming that Trejo's out-of-court identification was the result of impermissibly suggestive procedures, the trial court did not err in ruling that his in-court identification was admissible.[5] In this regard, if an out-of-court identification is impermissibly suggestive, an in-court identification is admissible if it " 'does not depend upon the prior identification, but has an independent origin.' "[6] Trejo and Guardado both testified that Escobar sat in the room with them for several minutes before the crimes began and that Escobar was not wearing any mask. Trejo testified that he had a good look at Escobar, that Escobar did most of the talking for the group he was with, and that his in-court identification was based on his viewing of Escobar at the crime scene. For these reasons, we conclude that the trial court did not err in admitting Trejo's in-court identification.

3. Escobar contends that the trial court erred by permitting a police detective to impermissibly bolster the testimony of Trejo. We conclude, however, that, even if the court erred in admitting the detective's testimony, the error was harmless given the strength of the evidence against Escobar.[7]

4. Escobar contends that the prosecutor violated the golden rule[8] in his closing argument. However, because Escobar did not object to the argument in question, he is procedurally barred from challenging the argument on appeal.[9]

5. Escobar contends that the trial court erred by ruling against his claim that he received ineffective assistance of trial counsel. More specifically, Escobar contends that trial counsel was ineffective for failing to discover an alibi witness that testified at the hearing on Escobar's motion for new trial.

To prevail on his claim of ineffective assistance of trial counsel, Escobar has the burden to show that trial counsel's performance was deficient, and that, but for that deficient performance, there is a

---

[4] *Hunt v. State*, 279 Ga. 3, 4 (608 SE2d 616) (2005).

[5] In this case, Trejo and Guardado reviewed separate groups of photographs while sitting at the same table. Guardado selected Escobar's photograph from his group of photographs and informed the attending officer. Escobar contends that Trejo was impermissibly influenced by this procedure. We disapprove of the use of this procedure, as it can lead to one of the witnesses impermissibly suggesting a suspect to the other witness and thus can cast doubt on the reliability of subsequent identifications. See 2 LaFave, Israel & King, Criminal Procedure, § 7.4 (d), Supp., p. 149 (2d ed. 1999); *United States v. Bagley*, 772 F2d 482, 493-494 (9th Cir. 1985).

[6] *Wilson v. State*, 275 Ga. 53, 59 (562 SE2d 164) (2002).

[7] *Bell v. State*, 278 Ga. 69, 72 (597 SE2d 350) (2004).

[8] See *Watson v. State*, 278 Ga. 763, 775 (604 SE2d 804) (2004).

[9] *Zellars v. State*, 278 Ga. 481, 483 (604 SE2d 147) (2004).

reasonable probability that the outcome of the trial would have been different.[10] "In making those showings, [Escobar] must overcome the strong presumption that the lawyer's performance falls within the wide range of reasonable professional assistance."[11]

At the hearing on Escobar's motion for new trial, an acquaintance of Escobar's testified that Escobar was with her between 8:00 p.m. and 11:00 p.m. on the night of the crimes.[12] She also testified that she contacted Escobar's trial counsel to get information about the case, but that he would not give her any information because she was not a member of Escobar's family. She acknowledged on cross-examination that she did not inform trial counsel that she was with Escobar on the night of the crimes.

Trial counsel testified that he spoke with Escobar about his defense and that Escobar never said anything about being with the acquaintance who testified at the motion for new trial hearing. Trial counsel added that Escobar told him that he had nothing to do with the shooting and that somebody in the apartment complex in which he lived must have planted the murder weapon in his apartment. Trial counsel stated that he went to the apartment complex to investigate, but was not able to uncover witnesses beneficial to Escobar. Moreover, trial counsel testified that the acquaintance contacted him, and that she merely inquired about general matters such as a possible trial date. According to counsel, she never mentioned that she was with Escobar on the night of the crimes.

Having reviewed the record, we conclude that the trial court was authorized to rule that trial counsel's performance in preparing for trial was not deficient and that trial counsel was not ineffective for failing to discover a possible alibi witness of whom he was not informed.[13]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 11, 2005.

*Martin M. del Mazo*, for appellant.
*Daniel J. Porter, Jr., District Attorney, David B. Fife, Assistant District Attorney, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.

---

[10] *Phillips v. State*, 277 Ga. 161 (587 SE2d 45) (2003).
[11] Id.
[12] Trejo and Guardado contacted the police about the crimes shortly after 9:00 p.m.
[13] See *Woods v. State*, 275 Ga. 844, 847 (573 SE2d 394) (2002); *Palmer v. State*, 274 Ga. 796, 798 (560 SE2d 11) (2002).