**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**December 18, 2012**

# In the Court of Appeals of Georgia

A12A2343. RUSSELL v. THE STATE.                           JE-089C

ELLINGTON, Chief Judge.

A Fulton County jury found Andre Russell guilty of highjacking a motor vehicle, OCGA § 16-5-44.1 (b); three counts of armed robbery, OCGA § 16-8-41 (a); three counts of aggravated assault with a deadly weapon, OCGA § 16-5-21 (a) (2); possession of a firearm during the commission of a felony, OCGA § 16-11-106 (b) (1); and fleeing or attempting to elude a police officer, OCGA § 40-6-395 (a). Russell appeals from the denial of his motion for new trial, contending that the trial court erred in admitting identification evidence, in giving a "level of certainty" jury charge, and in rejecting his claim of ineffective assistance of trial counsel. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that, at about 2:00 a.m. on December 27, 2007, Maggie Hall was driving with two of her friends through the Grant Park neighborhood of Atlanta. When Hall stopped her green, 2002 Honda Accord at a red light, a light-colored van came to a stop next to her car and two armed men got out of it. The man who got out of the passenger side of the van, later identified as Russell, walked to the rear driver's side door of Hall's vehicle, where Asher Kincaid was sitting. Kincaid quickly locked her door, so Russell pointed his weapon at Hall and demanded money. The unidentified man who got out of the driver's side of the van, Russell's accomplice, approached Hall's front seat passenger, Joseph Keck, and demanded money from him at gunpoint. The accomplice then opened the rear passenger door and demanded money from Kincaid. After Russell and his accomplice had robbed the three victims, the accomplice ordered the victims to get out of the car. The accomplice drove away in the van and Russell took Hall's Honda. One of the victims called 911 from a cell phone, and then the three walked to the a nearby police precinct where they told an officer what had happened. They all gave descriptions of the robbers, and Hall described the man who robbed her

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

2

as wearing his hair in shoulder length "twists or dreads." Hall told the police that she was confident that she could identify the person who had robbed her.

On December 29, a police office saw the stolen Honda, activated his patrol car's blue lights and siren, and pursued the driver, who attempted to elude him. After the first officer briefly lost sight of the Honda, another officer spotted the car and continued the chase. The driver eventually lost control of the car, crashed it into a wall near a public park, and fled on foot. A third officer caught the driver at a nearby service station and took him back to the second officer, who identified him as the man he had seen driving the stolen Honda. The police arrested the driver, who was later identified as Russell. Russell fit the description of the man who had robbed Hall.

A few days later, the victims were asked to come back to the precinct to review three books containing large numbers of mug shots. The majority of the pictures in the mug shot books were predominantly African-American males. The victims were not told that Russell had been arrested or that his photograph had been placed in one of the mug shot books. The victims reviewed the mug shot books together and all selected Russell's picture from one of the books they reviewed, identifying him as one of the men who had robbed them on December 27. The victims also identified Russell at trial.

At trial, Russell presented an alibi witness, a relative who testified that Russell was living with him and was at home on the night of the highjacking. The State impeached the witness, however, with evidence that Russell was living elsewhere on the night in question.

1. Russell contends the trial court erred in refusing to suppress the victims' identification testimony because the testimony was tainted by an impermissibly suggestive pre-trial identification procedure which created a substantial likelihood of misidentification. We disagree.

> When ruling on a motion to suppress, the trial court sits as the trier of facts, and its findings regarding them are not disturbed on appeal if there is any evidence to support them; the trial court's decisions with regard to questions of fact and credibility must be accepted unless clearly erroneous, and a reviewing court construes the evidence most favorably to the trial court's findings.

(Citations and punctuation omitted.) *Whitmore v. State*, 289 Ga. App. 107 (657 SE2d 1) (2008).

> Testimony concerning a pre-trial identification of a defendant should be suppressed if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. The taint which renders an identification procedure impermissibly suggestive must come from

4

the method used in the identification procedure. An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "this is our suspect."

(Punctuation and footnotes omitted.) *Brooks v. State*, 285 Ga. 246, 248-249 (3) (674 SE2d 871) (2009). There is no evidence in the record that the police did anything to influence the victims' choice. The victims were unaware that an arrest had been made and had not been informed that a suspect's photograph was in one of the books. In fact, the record shows that the victims were left alone, without police supervision, to review the books. There is no evidence that Russell's picture was displayed within the mug shot books in a way that was impermissibly suggestive. We have held that allowing a witness to review books containing mug shots is not an inherently impermissibly suggestive procedure. See *Robinson v. State*, 179 Ga. App. 616, 618-619 (2) (347 SE2d 667) (1986).

Although allowing witnesses to view the same photographic arrays or mug shots at the same time is discouraged, as the first witness to make an identification may influence the other witnesses, such simultaneous viewing is not fatal to an identification. *Escobar v. State*, 279 Ga. 727, 729 (2), n. 5 (620 SE2d 812) (2005). Pretermitting whether Keck and Kincaid may have been influenced by Hall's having

5

first selected Russell's picture, their later in-court identification was nevertheless admissible because it did not depend upon the prior identification, but had an independent origin. Id. at 728-729 (2). In this case, the other two witnesses had both recounted details about Russell's appearance to the police before their identification. Further, they both testified that they had an opportunity to see Russell's face during the crime, and they both testified that they identified Russell as the robber based upon their own recollections of his appearance. Consequently, the trial court did not err in admitting the identification testimony of these witnesses. See id.

2. Russell contends that the trial court erred by giving a "level of certainty" charge in instructing the jury on the reliability of eyewitness identification, a charge the Supreme Court of Georgia disapproved of in *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005).[2] Russell, however, did not object to the "level of certainty"

---

[2] The trial court instructed the jury:

Identity is a question of fact for you to determine. Your determination of identity is dependent upon the credibility of the witness or witnesses offered for this purpose. You should consider all of the factors previously charged you regarding credibility of witnesses. Some, but not all, of the factors you may consider in assessing the reliability of identification are: The opportunity of the witnesses to view the alleged perpetrator at the time of the alleged incident; the witness's degree of

6

language in the charge. Hence, he waived any objection he might have had, unless he can show that giving the charge "constitute[d] plain error which affect[ed] substantial rights of the parties." OCGA § 17-8-58 (b).[3] Russell has failed to make such a showing in this case.

In *Brodes*, the Supreme Court advised trial courts to refrain from instructing jurors that they may consider a witness's level of certainty when assessing the reliability of an identification. *Brodes v. State*, 279 Ga at 442. The Supreme Court

---

attention toward the alleged perpetrator at the time of the alleged incident; *the level of certainty shown by the witness about his or her identification; the possibility of mistaken identity*; whether the witness's identification may have been influenced by factors other than the view that the witness claimed to have; and whether the witness on any prior occasion did not identify the defendant in this case as the alleged perpetrator. (Emphasis supplied.)

[3] Russell's trial occurred in February 2009. OCGA § 17-8-58 (a), which became effective on July 1, 2007, requires that a defendant "inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." Failure to comply with subsection (a) "preclude[s] appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58 (b).

7

concluded that giving the instruction constituted harmful error under the circumstances of that case. Id. Brodes was convicted of armed robbery in a trial in which the only evidence implicating him was the testimony of the two victims, both of whom identified Brodes in court as the perpetrator. Id at 435-438. "The victims testified they were 'absolutely certain' of their identification of him and were repeatedly called upon by the prosecuting attorney to repeat their certainty in the accuracy of their identification." Id at 535. Additionally, the Court considered that one of the victims in that case had been unable to give the police a physical description of Brodes, that the victims were under stress while being robbed at gunpoint at night, that Brodes was a stranger to the victims, that one of the victims was unable to pick the Brodes' photograph from a photographic array, and that the other victim could only describe the weapon that was used. Id. Nevertheless, both victims repeatedly stated at trial that they were positive the defendant was the robber. Id. at 437.

The victims in this case, unlike those in *Brodes*, gave descriptions of the robbers to the police immediately after the incident, including the fact that the man who robbed Hall wore his hair in shoulder-length "twists or dreads." Hall told the police that she could identify the man who robbed her. Moreover, the victims each

8

identified Russell's picture from mug shot books. None of the victims repeatedly testified to being "positive" or "absolutely certain" of their identification, as those in *Brodes* did. The victims each identified Russell and were, thereafter, thoroughly cross-examined by defense counsel about the circumstances surrounding their identification, including the lighting and their opportunity to see Russell's face. The State also introduced other evidence implicating Russell, including his possession of the car two days after the highjacking and his attempt to elude the police. Further, the State did not assert during closing argument that the victims' level of certainty should be afforded greater weight than any other factor. Finally, the trial court accurately instructed the jury as to the State's burden of proving Russell's identity beyond a reasonable doubt and the possibility of mistaken identification, as well as several other relevant considerations, such as witness credibility and impeachment. See *Williams v. State,* 300 Ga. App. 839, 844-845 (3) (a) (686 SE2d 446) (2009). Accordingly, we conclude that it is highly probable that giving the jury instruction did not contribute to the verdict given the circumstances of this case, and any error was thus harmless. See id.

3. Russell contends that the court erred in denying his motion for new trial on the ground of ineffective assistance of counsel. Under *Strickland v. Washington*, 466

9

U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. See id. at 687-688, 694 (III) (A)-(B). "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case." (Citations and punctuation omitted.) *Williams v. State,* 277 Ga. 853, 857 (6) (596 SE2d 597) (2004). If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong. *Fuller v. State,* 277 Ga. 505, 507 (3) (591 SE2d 782) (2004). When reviewing the trial court's decision, this Court will accept the trial court's factual findings and credibility determinations unless clearly erroneous; however, we review the court's application of legal principles de novo. *Robinson v. State,* 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Russell argues that his trial counsel was ineffective for not objecting to the "level of certainty" charge. We disagree. Russell cannot establish that he was

prejudiced as a result of counsel's decision for the same reasons discussed in Division 2, supra.

(b) Russell also contends that his counsel was ineffective for failing to request a charge informing the jury that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Because the State adduced both direct (eyewitness testimony) and circumstantial evidence at trial in this case, the trial court was not required to charge the jury on circumstantial evidence pursuant to OCGA § 24-4-6, absent a request. See *Stubbs v. State*, 265 Ga. 883, 884-885 (2) (463 SE2d 686) (1995).

Because the State's case rested primarily on direct evidence and because Russell relied on an alibi defense at trial, we cannot conclude that Russell's trial counsel was deficient in declining to request a jury charge on circumstantial evidence. See *Landers v. State*, 270 Ga. 189, 191 (4) (508 SE2d 637) (1998). Moreover, Russell has failed to show that he was prejudiced by his counsel's failure to request the charge. Id.

Consequently, the trial court did not err in denying Russell's motion for new trial on the ground of ineffective assistance of trial counsel.

11

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*