**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**January 9, 2014**

# In the Court of Appeals of Georgia

A13A2143. McCOWAN v. THE STATE.                          DO-080 C

DOYLE, Presiding Judge.

After a jury trial, Kenyoun M. McCowan was convicted of two counts of armed robbery,[1] four counts of aggravated assault,[2] one count of burglary,[3] and two counts of false imprisonment.[4] McCowan filed a motion for new trial, which the trial court denied. He appeals, contending that the trial court erred by denying his motion to

---

[1] OCGA § 16-8-41 (a). The aggravated assault and burglary charges merged with the armed robbery charge. The State also charged McCowan with recidivism pursuant to OCGA § 17-10-7 (a) for previously being convicted of a felony.

[2] OCGA § 16-5-21 (a) (1) & (2).

[3] OCGA § 16-7-1 (b).

[4] OCGA § 16-5-41 (a).

suppress his pre-trial photographic lineup identification. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[5] This same standard applies to our review of the trial court's denial of [the defendant's] motion for new trial. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

So viewed, the record shows that on the evening of July 13, 2009, Emanuel Orr drove McCowan and Michael Kidd to a convenience store near the Stay Lodge in Rome because McCowan wanted to try and sell a firearm, which he was carrying. After the two passengers exited his vehicle (a red Ford Mustang), Orr waited in the parking lot but only McCowan returned to the vehicle, and the two then drove to a nearby automatic teller machine ("ATM").

---

[5] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)

[6] (Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

In the meantime, while Orr was waiting in the parking lot for the two men to return from the convenience store, McCowan and Kidd had walked to an adjacent Stay Lodge, where they burst into the room of Rufus and Consuela Dickerson, demanding money of the Dickersons while McCowan brandished the firearm. McCowan left the room with the victims' wallets and cell phones, while Kidd stayed behind to ensure that the victims had provided the correct pin numbers to McCowan, who returned to Orr's vehicle to go to the ATM. McCowan was unsuccessful at withdrawing money with the cards, and he returned to Orr's vehicle.

While McCowan was gone, however, a friend of the Dickersons arrived at the hotel, causing Kidd to flee the scene as Rufus Dickerson chased him. Rufus saw Kidd attempt to get into a red Mustang, but Orr waved Kidd away when Orr noticed Rufus chasing Kidd. Rufus noted the license plate of the Mustang, which he provided to police.

Thereafter, police contacted Orr, who identified McCowan and Kidd as perpetrators of the robbery of the Dickersons. Both of the Dickersons identified McCowan as a perpetrator from a photographic lineup, and Consuela Dickerson identified Kidd as a perpetrator from a photographic lineup.

After a jury trial, McCowan was found guilty of armed robbery, aggravated assault, burglary, and false imprisonment. Following the denial of McCowan's motion for new trial, this appeal followed.

In his sole enumeration of error, McCowan argues that the trial court erred by denying his motion to suppress the results of the pre-trial photographic lineup because the lineup was impermissibly suggestive and was prejudicial.

> When ruling on a motion to suppress, the trial court sits as the trier of facts, and its findings regarding them are not disturbed on appeal if there is any evidence to support them; the trial court's decisions with regard to questions of fact and credibility must be accepted unless clearly erroneous, and a reviewing court construes the evidence most favorably to the trial court's findings.[7]

During trial, McCowan moved to suppress the results of the Dickersons' out-of-court photographic identification of him. The State presented the officer who performed the lineups, and he testified that he prepared the photographic array of six individuals using jail photographs of individuals with similar height, weight, sex, race, hair color, and eye color of the suspects and took the lineups to the Dickersons'

---

[7] (Punctuation omitted.) *Russell v. State*, 319 Ga. App. 472, 473 (1) (735 SE2d 797) (2012), quoting *Whitmore v. State*, 289 Ga. App. 107 (657 SE2d 1) (2008).

room at the hotel. The officer had to prepare Kidd's lineup using photographs on separate sheets of paper because he did not have a jail photograph in the county system. The officer separated the Dickersons, with one outside the room while the other viewed the lineups, and the two were not able to discuss the lineups between themselves.

The officer stated that he "explained to them individually that [he] needed them to look at the photographs to see if they saw the person that committed the crime against them. Their picture may or may not be on there. Don't pick somebody if you're not one hundred percent sure." The officer did not tell the Dickersons that they should be looking for the individual who stayed in the room or the individual who went to the ATM, and he did not state whether either of the suspects was in custody. Consuela Dickerson picked McCowan after looking at the lineup for about 15 seconds, but Rufus "took a little bit longer . . . but not very long" to identify McCowan's photograph as the perpetrator.

Testimony concerning a pre-trial identification of a defendant should be suppressed if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification

5

procedure. An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "this is our suspect."[8]

1. McCowan contends that the lineup was impermissibly suggestive because the officer failed to admonish the victims that a photograph of the perpetrator may not appear in the lineup. The transcript of the motion to suppress, however, shows that the officer did admonish the Dickersons that the suspect may not appear in the array.[9]

2. McCowan also contends that the lineup was impermissibly suggestive because the officer who conducted it utilized a simultaneous photo array rather than a sequential photo array used for identification of Kidd. We disagree.

The officer who presented the lineup of McCowan prepared it using photographs of suspects from the same location with the same background wearing similar white shirts. The officer also used photographs of similarly built individuals

---

[8] (Punctuation omitted.) *Russell*, 319 Ga. App. at 473-474 (1), quoting *Brooks v. State*, 285 Ga. 246, 248-249 (3) (674 SE2d 871) (2009).

[9] See *Ivey v. State*, 277 Ga. 875, 876-877 (3) (596 SE2d 612) (2004) (pretrial identification procedure not impermissibly suggestive, even though it would have been preferable for officer to give the witness a standard admonition that lineup may or may not have had picture of perpetrator).

who had similar features. He did not indicate to the Dickersons that they should be looking for the individual who stayed with them in the room or who went to the ATM, and he even told them that the suspect may not be in the array and that they should not identify someone as a suspect unless they were 100 percent sure of their identification. The mere fact that Rufus Dickerson was unable to identify Kidd does not mean that McCowan's lineup was impermissibly suggestive, and we decline to hold that a simultaneous lineup is impermissibly suggestive as a matter of law.[10] Based on the testimony of the officer who prepared and presented the lineup to the Dickersons, the trial court did not err by denying the motion to suppress their out-of-court identifications of McCowan.

3. Based on our holding in Division 2 we need not address McCowan's argument regarding the prejudicial effect of the lineup.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[10] See, e.g., *Parker v. State*, 273 Ga. App. 823, 824 (616 SE2d 139) (2005) (upholding denial of a motion to suppress in which a simultaneous array was utilized).