In the Supreme Court of Georgia

Decided:    March 7, 2016

S15A1724.  BRANNON v. THE STATE.

THOMPSON, Chief Justice.

Appellant Stewart Brannon was found guilty of malice murder, felony murder, armed robbery and aggravated assault with a firearm in connection with the shooting death of Mario Smith.[1]  He appeals from the denial of his motion for new trial, asserting that the trial court erred in refusing to hold that OCGA § 17-16-4, Georgia's reciprocal discovery statute, required the State to turn over law enforcement officers' notes; erred in failing to find that the State withheld exculpatory material from the defense in violation of Brady v. Maryland,  373

_____

[1] The crimes occurred on August 23, 2008.  Appellant was indicted by a Houston County grand jury on September 9, 2008, on charges of malice murder, felony murder (two counts), armed robbery, and aggravated assault with a firearm.  Following a jury trial from April 8-11, 2013, appellant was found guilty on all counts.  Upon receipt of the jury's verdict, the trial court sentenced appellant to life without the possibility of parole on the malice murder count and, as further discussed in Division 2, infra, determined that the remaining counts merged into other counts for sentencing purposes.  Appellant filed a motion for new trial on April 12, 2013, which he amended on August 19, 2014, and again on February 12, 2015.  Following a hearing, the trial court entered an order on March 24, 2015 denying the motion for new trial.  Appellant filed a notice of appeal on April 2, 2015 and the appeal was docketed in this Court for the September 2015 term and submitted for a decision on the briefs.

U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (92 SCt 763, 31 LE2d 104) (1972); erred in admitting other acts evidence pursuant to OCGA § 24-4-404 (b); erred in allowing a police detective to identify the victim in video evidence; erred in improperly rehabilitating a witness for the State; and erred in failing to find he received ineffective assistance of counsel at trial. Finding no error, we affirm appellant's conviction of malice murder. In view of a sentencing error, however, we vacate a portion of the sentencing order and remand this case to the trial court for resentencing.

1. Viewed in the light most favorable to the jury's verdict, the evidence at trial showed the victim owned a 1987 red Chevrolet Monte Carlo which he advertised for sale in Autotrader magazine in August of 2008. Appellant's co-defendant Joshua Rounsoville saw the advertisement and made arrangements to see the car which the victim kept at a rented storage unit in Warner Robbins, Georgia. On August 23, 2008, appellant, driving his mother's black Ford F-150, took Rounsoville to meet with the victim and see the car. Appellant knew Rounsoville was carrying a gun. The next day, the victim was found dead in his storage unit with a single gunshot wound to the head and a 9-mm shell casing lying nearby.

Rounsoville, who pled guilty to the murder and testified at appellant's trial, admitted to shooting the victim in the storage bay with a 9-mm handgun. He testified that he then drove the victim's car to Eatonton with appellant following in the F-150; that he and appellant left the stolen vehicle at a friend's house overnight; that they returned the next morning to retrieve the car which had been damaged and stripped of its distinctive tires; and, that after obtaining tires for the victim's car, they drove it off the property. Darcus Lane testified that appellant and Rounsoville brought the victim's car to his house and that both men returned the next day to retrieve the vehicle. The victim's car was subsequently found ditched in the woods.

Following his arrest, appellant admitted in a recorded statement that he went to Warner Robins with Rounsoville to meet the victim and that he waited for Rounsoville to leave in the victim's car before following him back to Putnam County where both defendants lived. Appellant's statement was corroborated at trial by videotape evidence from the storage facility taken on the day of the crime which showed the victim's black SUV pulling up to the storage building; the red Monte Carlo exiting the premises with a black F-150 truck following behind; the victim re-entering the storage building while the black F-150 waits;

and the Monte Carlo again exiting the premises followed by the F-150. Additionally, another witness who was at a shop near the storage facility on the day of the crime testified that he saw two black males leaning against a Monte Carlo with a black F-150 truck parked nearby. Finally, evidence of appellant's guilty plea to a similar crime in which appellant and Rounsoville shot a man in Monroe County, Georgia in order to steal his vehicle only 13 days prior to the crime at issue was admitted into evidence.

We conclude the evidence in this case was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. While the evidence was sufficient to support the jury's guilty verdicts in this case, the trial court erred in merging certain counts for judgment and sentencing. See Hulett v. State, 296 Ga. 49, 54 (766 SE2d 1) (2014). Although the State has not appealed this sentencing error, upon noticing such merger issues in a direct appeal, this Court may resolve them. See id; Nazario v. State, 293 Ga. 480, 488 (2) (b) (746 SE2d 109) (2013). Here, appellant was charged with malice murder (Count 1), felony murder based on armed robbery (Count

4

2), armed robbery (Count 3), felony murder based on aggravated assault (Count 4) and aggravated assault with a firearm (Count 5) and was convicted by the jury on all counts. The trial court correctly sentenced appellant on the malice murder conviction, see Malcolm v. State, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993), but failed to recognize that the felony murder counts thereafter were vacated as surplusage. See Hulett, supra at 53. As a result, the trial court improperly merged the non-murder counts into the corresponding felony murder counts and merged both felony murder counts into the malice murder count for sentencing. Id. As the felony murder counts no longer existed, the only determination for the trial court was whether the underlying felonies merged, as a matter of fact, into the malice murder count. Id. Because there was no evidence presented authorizing the jury to find that the aggravated assault with a firearm committed on the victim was not followed almost immediately by the fatal shooting or that a deliberate interval existed between the two events, we find that appellant's conviction for aggravated assault (Count 5) merges as a matter of fact into his conviction for malice murder (Count 1). See id. at 55. See also Solomon v. State, 293 Ga. 605, 606 (1) (748 SE2d 865) (2013). However, "'because malice murder has an element that must be proven (death of the victim) that armed

robbery does not, and armed robbery has an element (taking of property) that malice murder does not,'" we find that appellant's conviction for armed robbery (Count 3) did not merge as a matter of fact with his malice murder conviction (Count 1). Hulett, 296 Ga. at 55. The trial court, therefore, should have sentenced appellant for Count 3, in addition to the sentence it imposed on Count 1. Accordingly, we vacate that portion of the sentencing order in which the trial court "merged" Count 5 into Count 4, Count 3 into Count 2, and Counts 2 and 4 into Count 1, and remand this case to the trial court for re-sentencing on Count 3.

3. Appellant contends the trial court erred in denying his motion to compel the State's production of law enforcement officers' notes pursuant to OCGA § 17-16-4 and further erred in denying his claim on motion for new trial that the State withheld exculpatory material from the defense in violation of Brady, supra, 373 U.S. at 87. Additionally, appellant contends the trial court erred in refusing to compel the State to provide the defense with information about plea deals given to State witnesses as required by Giglio, supra, 405 U.S. 150. These contentions lack merit.

(a) Appellant, who was interrogated by officers from three separate

6

counties about several different crimes, moved to compel the State to produce any and all information shared between law enforcement officers about their various interrogations of appellant, including any of the officers' handwritten notes. Finding that the informal notes of law enforcement officials were not included among the types of evidence the State is statutorily required to produce in criminal cases, the trial court denied the motion. In so ruling, however, the trial court reminded the State that it had a continuing obligation under <u>Brady</u> to provide the defense with any law enforcement notes in the State's possession which contained potentially exculpatory information. See <u>Brady</u>, supra.

On motion for new trial, the trial court rejected appellant's argument that OCGA § 17-16-4 required the State to produce law enforcement officers' notes, and, finding no evidence that such notes containing exculpatory information had been withheld from the defense by the State, or even existed, the trial court found no merit to appellant's claim that the State's failure to produce these notes violated <u>Brady</u>, supra. We agree.

By its plain language, OCGA § 17-16-4, which addresses Georgia's requirements for the disclosure of evidence in criminal trials and specifies the types of evidence the State must turn over to the defense, does not include the

informal notes of law enforcement officials among the types of evidence the State is statutorily required to produce. Accordingly, we find no error in the trial court's determination that absent a showing by the defense that it was legally entitled to the discovery of such notes on some other basis, the State had no duty to provide them under OCGA § 17-16-4. See King v. State, 273 Ga. 258, 263 (539 SE2d 783) (2000). See also Harper v. State, 249 Ga. 519, 528 (292 SE2d 389) (1982) (observing there is "'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case,'" quoting Moore v. Illinois, 408 U. S. 786, 795 (92 SCt 2562, 33 LE2d 706) (1972)).

Although appellant disputes the trial court's finding that the type of notes he sought to compel did not exist, mere speculation is insufficient to substantiate appellant's claim that the State withheld exculpatory evidence which prejudiced his defense. "To prevail on a Brady claim, a defendant must show (1) the State possessed evidence favorable to the defendant; (2) the defendant did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the

outcome of the trial would have been different." Hester v. State, 292 Ga. 356, 358 (736 SE2d 404) (2013). Accord Banks v. Dretke, 540 U.S. 668, 691 (124 SCt 1256, 157 SE2d 1166) (2004). Because the record shows that appellant failed to make any of the required showings under Brady, the trial court properly rejected this claim.

(b) Nor do we find error in the trial court's refusal to require the State to obtain and supply information to the defense about plea deals allegedly given to various State witnesses. The State has a duty to reveal to the defense any agreement with a witness concerning criminal charges pending against that witness, and the failure to disclose such an agreement constitutes a violation of the accused's due process rights under Brady, supra. See Giglio, supra, 405 U.S. at 154; Coleman v. State, 271 Ga. 800, 802 (523 SE2d 852) (1999). In order to establish reversible error, however, a defendant must show that had evidence of the agreement been disclosed, there exists a reasonable probability that the result of the defendant's trial would have been different. See Coleman, supra.

Here, the trial court found the prosecution was not involved in any discussions with other law enforcement agencies outside of Houston County

regarding any plea offers made to any of the State's witnesses at appellant's trial. The trial court further determined that the only plea offer made by the State in this case was to Rounsoville, a deal the State revealed to appellant during discovery. Having failed to come forward with any evidence supporting his contention that plea deals were given to State witnesses by other jurisdictions, appellant failed to make the showings required under Brady to support his claim. See Hester, supra at 358.

4. Appellant next contends the trial court erred in holding that evidence of the Monroe County crimes to which he pled guilty was admissible pursuant to OCGA § 24-4-404 (b). We disagree.

Evidence of other crimes, wrongs, or acts committed by a defendant is admissible to prove, among other things, motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, but cannot be used to prove the character of the defendant by presenting evidence that the accused has a propensity to commit crime. See OCGA § 24-4-404 (b). In the instant case, the trial court ruled that the evidence of the Monroe County crimes could be considered by the jury for the purposes of showing appellant's knowledge, intent, participation in a plan, or identity. Appellant claims the trial

court erred in admitting this evidence because its probative value was substantially outweighed by the danger of unfair prejudice. See OCGA § 24-4-403.

In determining the admissibility of "other acts" evidence, this Court has adopted the Eleventh Circuit's three-part test for admissibility under Federal Rule of Evidence Rule 404 (b) which requires that the admitting court find (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act. See Bradshaw v. State, 296 Ga. 650, 656 (769 SE2d 892) (2015), citing United States v. Ellisor, 522 F3d 1255, 1267 (11th Cir. 2008). When weighing the probative value of other acts evidence against its prejudicial effect, Georgia courts apply the balancing test set forth in OCGA § 24-4-403,[2] which similarly tracks its federal counterpart. See Fed. R. Evid. 403. On appeal, a trial court's decision to admit

---

[2] OCGA § 24-4-403 provides:

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

11

evidence pursuant to OCGA § 24-4-404 (b) is reviewed for a clear abuse of discretion, a review requiring the appellate court to make a "common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Bradshaw, 296 Ga. at 657-658 (citations and quotation marks omitted).

Assessing the circumstances surrounding the other acts evidence admitted in this case we find that evidence of the Monroe County robbery and shooting satisfied the three-part test for admissibility. First, this evidence was properly admitted by the trial court to show appellant's intent, knowledge and identity.[3] Where appellant was prosecuted as a party to the murder and did not admit to knowing what Rounsoville did to the victim in the storage bay, the State had the burden to prove appellant and Rounsoville shared a common criminal intent. See Navarrete v. State, 283 Ga. 156, 158 (656 SE2d 814) (2008) (observing mere presence at the scene of a crime is insufficient evidence to convict one of being a party to a crime). As proof of a common criminal intent may be inferred

___

[3] Having determined that the evidence was admissible as to intent, knowledge and identity, we need not examine whether it was also admissible to show participation in a plan. See Bradshaw, supra at 657, n. 5.

from the defendant's presence, companionship, and conduct before, during and after an offense, see id, evidence of appellant's prior participation in the Monroe County crimes in which Rounsoville shot a man in order to steal his car, was admissible to show appellant had knowledge of, and shared, Rounsoville's criminal intent in the instant case.

In addition, the Monroe County crimes were sufficiently similar to the crimes at issue to be admissible as proof of identity. See Brooks v. State, __ Ga. __ (S15A1480, March 7, 2016). See also United States v. Phaknikone, 605 F3d 1099, 1108 (11th Cir. 2010) (When introduced to prove identity, the physical similarity of extrinsic offense evidence to the offense charged "'must be such that it marks the offenses as the handiwork of the accused.'"). Here, both crimes, which occurred 13 days apart in neighboring counties, involved the same two defendants stealing a car with distinctive tire rims after shooting the vehicle's owner. In each case, appellant used one of his mother's cars to drive Rounsoville to the scene of the crime, waited while Rounsoville shot the car's owner and took the vehicle, and then followed Rounsoville as he drove the stolen car from the scene. We find that the modus operandi for each carjacking was sufficiently similar to mark the offenses as appellant's handiwork. See

United States v. Clemons, 32 F3d 1504, 1509 (11th Cir. 1994) (uncharged carjackings were sufficiently similar to the charged offense of murdering a federal agent as to warrant their admission in evidence to prove identity). Further, although appellant admitted in a statement he gave police following his arrest that he drove Rounsoville to Warner Robins on the day of the crime to meet with the victim about the victim's car, he recanted this statement at trial, testifying that he had been coerced into making it by the police and that it was untrue. By presenting an alibi defense at trial, appellant made identity a pivotal consideration for the jury to resolve. Id.

In light of the foregoing, we find the trial court did not abuse its discretion in determining that the second prong of the admissibility test likewise was met. As evidence of the Monroe County crimes was necessary to counter appellant's testimony at trial and the defenses on which he relied, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice to appellant. See United States v. Jernigan, 341 F3d 1273, 1280 (11th Cir. 2003) (Rule 404 (b) is a rule of inclusion and other crimes evidence, like other relevant evidence, should not be excluded lightly when central to the government's case). Bradshaw, supra at 657 (admissibility of other acts evidence calls for common

14

sense approach, which includes prosecutorial need). Finally, we note that appellant pled guilty to the Monroe County crimes, thus the third and final requirement, that there be sufficient proof that appellant committed these crimes, has also been met. For the reasons stated above, we find no error in the trial court's admission of the other acts evidence at trial.

5. Appellant additionally argues the trial court improperly allowed a police detective, Sergeant Art Curnutte, to testify as to the contents of a surveillance video over appellant's objection. Appellant complains that the trial court improperly allowed Curnutte to identify the victim as being depicted on the surveillance video despite having no personal knowledge of the victim's personal features or observable behaviors. He also contends the trial court erred in permitting Curnutte to testify about the date-time stamp appearing on the video, arguing that the sergeant's second-hand viewing of the surveillance video in this case did not meet the threshold requirements necessary for its admission pursuant to OCGA § 24-9-923.[4]

---

[4] As the Federal Rules of Evidence do not contain a provision like OCGA § 24-9-923 specifically pertaining to the authentication of photographs, motion pictures, video and audio recordings when no witness is available, and as this statute in Georgia's new evidence code is substantially similar to the pre-existing statute, former OCGA § 24-4-48, which it replaced, we therefore give OCGA § 24-9-923 the same meaning as former OCGA § 24-4-48. See Bradshaw, 296 at 654.

OCGA § 24-9-923 (c) governs the method for admitting video recordings created by unmanned cameras such as the surveillance video admitted by the trial court in this case.[5] See Dawson v. State, 283 Ga. 315, 317 (658 SE2d 755) (2008). Pursuant to this statute, videotapes created by unmanned cameras "shall be admissible in evidence when the court determines, based on competent evidence presented to the court," that the video tends to reliably show the fact or facts for which it is offered. OCGA § 24-9-923 (c). Although this provision also requires that the videotape show the date and time the recording was made, the fact "[t]hat the date-time stamp does not reflect the actual time when the images were captured goes to the weight to be given the evidence, not its admissibility." Dawson, supra at 318-319. See Holloway v. State, 287 Ga. App. 655, 658 (2) (653 SE2d 95) (2007). The record shows that Curnutte

[5] This provision provides, in pertinent part:

(c) Subject to any other valid objection . . . video recordings and audio recordings produced at a time when the device producing the items was not being operated by an individual person or was not under the personal control or in the presence of an individual operator shall be admissible in evidence when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered, provided that, prior to the admission of such evidence, the date and time of such . . . video recording shall be contained on such evidence, and such date and time shall be shown to have been made contemporaneously with the events depicted in such . . . video recording.

OCGA § 24-9-923 (c).

16

testified that he had been trained in video surveillance and retrieved and captured video recordings as part of his work; that he downloaded videotape from surveillance cameras at the scene of the crime on the day the victim's body was discovered; that he retrieved the video using a system for which he was certified and also trained other officers to use; that at the time he downloaded the video the equipment appeared to be functioning properly except that the date-time stamp was inaccurate; that he was able to determine that the date-time entry on the video was two days, 12 hours, and 45 minutes fast by comparing it with the actual date and time; that he viewed the video on the day he downloaded it; and that the video being offered as evidence was the one he retrieved from the surveillance cameras at the scene of the crime. Under the circumstances, we hold the trial court did not abuse its discretion in admitting the videotape. See Dawson, supra; Dixon v. State, 300 Ga. App. 183, 185 (684 SE2d 679) (2009).

Appellant further complains that when the video was played for the jury, the trial court improperly allowed Curnutte to offer opinion testimony identifying the victim as appearing therein. When a witness identifies a person in a video or picture, there must be some basis in knowledge for the witness's

identification to be superior to that of the jury. See <u>Dawson</u>, supra at 320 ("'It is improper to allow a witness to testify as to the identity of a person in a video or photograph when such opinion evidence tends only to establish a fact which average jurors could decide thinking for themselves and drawing their own conclusions. [Cits.]'"); <u>Grimes v. State</u>, 291 Ga. App. 585, 590 (662 SE2d 346) (2008) (same). Pretermitting whether Curnutte's knowledge of the victim's appearance on the day he was killed was superior to that of the average juror in this case,[6] we find that any error by the trial court in allowing Curnutte to offer opinion evidence identifying the victim on the videotape was harmless. Significantly, Curnutte never identified appellant as appearing in the videotape and misidentification of the victim was not the basis of appellant's defense. See <u>Rogers v. State</u>, 294 Ga. App. 195, 198-199 (670 SE2d 106) (2008). Compare <u>Grimes</u>, supra at 592 (2) (improper admission of opinion testimony identifying defendant in photograph constituted harmful error where basis of the defense was misidentification of the defendant). Moreover, Curnutte's testimony identifying the victim at the crime scene was cumulative in that it was supported

___

[6] The trial court noted at the motion for new trial hearing that Curnutte had direct contact with the victim's body and car at the crime scene, as well as with the stolen Monte Carlo when it was recovered in Putnam County.

by testimony from other witnesses, as well as by appellant's own statement. Considering these factors and the overwhelming evidence of appellant's guilt, we find that any error by the trial court in allowing Curnutte to identify the victim on the videotape was harmless.

6. Appellant also complains that the trial court abused its discretion in its handling of his co-defendant, Rounsoville, on the witness stand. At the time of appellant's trial, Rounsoville had already been tried and convicted of the Monroe County shooting and car theft, and his conviction was on appeal. Although he had entered a guilty plea in the instant case, Rounsoville's truthful testimony at appellant's trial was not a specific condition of his plea. When called as a witness at appellant's trial, Rounsoville initially refused to answer any questions that specifically implicated appellant in either crime. After excusing the jury, the trial court admonished Rounsoville by threatening to hold him in contempt and strike his testimony. However, when Rounsoville subsequently failed to cooperate, instead of immediately holding him in contempt, the trial court explained Rounsoville's Fifth Amendment rights to him and allowed him to meet with his attorney. Thereafter, Rounsoville returned to the stand and answered the questions related to the Houston County crimes,

while invoking his Fifth Amendment rights with respect to the Monroe County crimes.

Appellant argues that by not following through on its initial threat to hold Rounsoville in contempt and strike his testimony, the trial court improperly assisted the State in rehabilitating a hostile witness and thus failed to maintain its impartiality. See United States v. Wright, 392 F3d 1269, 1274 (11th Cir. 2004) (trial court abuses its authority when it abandons its impartial role and assumes that of an advocate). Although admitting that the trial court was allowed to interrogate Rounsoville to ensure he understood his rights, appellant contends that the court's remarks became prejudicial when they kept a key witness on the stand for the benefit of the State over the defense.

Looking at the record as a whole, we find no evidence that the complained of remarks by the trial court showed bias against appellant or created "an air of partiality which denied [appellant] the right to a fair and impartial trial." U. S. v. Verbitskaya, 406 F3d 1324, 1337 (11th Cir. 2005) (finding no reversible error where a judge's remarks were not so biased and unfair so as to prejudice the defendant). See also Brough v. Imperial Sterling Ltd., 297 F3d 1172, 1181 (11th Cir. 2002) (In determining whether a party's rights have been substantially

impacted, "a court must consider the record as a whole and not merely isolated remarks."). Here, the trial court was simply instructing a witness on his duty to answer questions. See Coggins v. Fitts, 268 Ga. 112, 113 (485 SE2d 495) (1997) (holding that the trial court did not express an improper bias by asking questions about a legal question that was tangentially related to the parties' dispute). Appellant has failed to show any error on the part of the trial court in instructing the witness in this case or that he was harmed thereby, thus the challenged remarks do not require reversal. See Hendricks v. State, 283 Ga. 470, 472 (3) (660 SE2d 365) (2008).

7. Finally, appellant asserts his trial counsel was constitutionally ineffective in that counsel inadequately challenged the search warrant for appellant's house, untimely filed a motion for a private investigator and an incomplete list of alibi witnesses, and failed to thoroughly prepare appellant's alibi witnesses for trial. To succeed on a claim of ineffective assistance of counsel, appellant must show both that counsel's performance was deficient, and the deficient performance was prejudicial to his defense. See Strickland v. Washington, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). Moreover, to establish deficient performance, appellant must overcome the

strong presumption that his counsel's conduct fell within the broad range of reasonable professional conduct and "show that his counsel performed in an objectively unreasonable way, considering all circumstances and in the light of prevailing professional norms." Prince v. State, 295 Ga. 788, 791 (764 SE2d 362) (2014). Further, "[f]ailure to satisfy either prong of the Strickland test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong." Hargrove v. State, 291 Ga. 879, 881 (734 SE2d 34) (2012).

Appellant argues his trial counsel was ineffective for failing to argue that the search warrant issued for appellant's house was insufficient as lacking in specificity because it was essentially identical to the warrant for Rounsoville's house except for the name, address, and accompanying affidavits. The record reflects that appellant's trial counsel moved to suppress evidence obtained pursuant to appellant's search warrant and, at the hearing on this motion, thoroughly cross-examined the Putnam County Sheriff regarding the affidavit in support of the warrant and the information the sheriff had received about appellant and the stolen car. The sheriff, who testified at length about his investigations regarding the homicide and the suspects' vehicles, stated that law

22

enforcement officials were looking for the same items at both houses because it was known the defendants had been together and had recently possessed the victim's vehicle. The warrants contained a list of specific items, including vehicles and apparel, which the accompanying affidavits identified as associated with the homicide in this case and the crime which occurred in Monroe County. In describing the items to be seized pursuant to a search warrant, the degree of specificity required "'is flexible and will vary with the circumstances involved.'" Reaves v. State, 284 Ga. 181, 184 (664 SE2d 211) (2008) (citation omitted). Under the circumstances presented, we find the search warrant for appellant's house was sufficiently definite and that trial counsel's failure to challenge the warrant on this basis was not unreasonable.

With respect to appellant's remaining claims, the record shows that counsel did provide adequate notice of alibi witnesses, that he met with these witnesses and that he was able to present such evidence at trial. Based on the foregoing, appellant has failed to show his trial counsel performed deficiently and his ineffective assistance of counsel claims lack merit.

Judgment affirmed in part and vacated in part and case remanded for resentencing. All the Justices concur.

23