**FOURTH DIVISION
DILLARD, P. J.,
BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**July 3, 2024**

# In the Court of Appeals of Georgia

A24A0876. THOMPSON v. THE STATE.

BROWN, Judge.

Following trial, a jury found Batrone Thompson guilty of aggravated assault and armed robbery. He appeals from the denial of his motion for new trial, arguing that the trial court erred by admitting a videotaped surveillance tape and in its charge to the jury. For the following reasons, we disagree and affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence at trial showed that on August 30, 2019, James McDonald, who worked as a loss prevention officer at a mall department store, went to the restroom; as he was headed to the urinal, he noticed that someone was in a closed bathroom stall. McDonald faced the wall as he

used the urinal, and while he was zipping up his pants, the individual from the stall, later determined to be Thompson, walked up behind him and put a gun to his neck. McDonald testified that although he was facing the wall, he knew that a gun was against his neck because he could feel it "pushing . . . hard." Thompson told McDonald to give him his keys, wallet, and money. Thompson then reached around McDonald's body, went through his pockets, and removed the knife and handcuffs which McDonald was carrying. As Thompson removed the handcuffs, he asked McDonald, "What's this?"

When McDonald felt the gun move away from his neck, he used the opportunity to grab the gun from Thompson and spin him around. The two men, who were then facing each other and fighting over the gun, fell to the ground. Thompson got up from the floor and ran out of the bathroom while McDonald remained and called 911. During the struggle, McDonald saw both Thompson, who was wearing a light-colored T-shirt, light blue jeans, black shoes, and had a backpack, and the gun Thompson was holding, which was black with a short barrel.

Shortly after the incident, McDonald, who was in charge of retrieving the department store's surveillance tapes, pulled the clip from the system and gave it to

law enforcement. McDonald testified that he recognized the person in the video because of his clothing and backpack. McDonald also testified that Thompson had "very obvious facial features," and that his "face was burned into my brain"; he later identified Thompson as his assailant at a police photographic line-up. McDonald also identified Thompson as his assailant at trial.

Over objection, the State introduced into evidence the store's surveillance videotape, which consisted of 17 seconds of footage showing the backs of two men leaving the store, one of whom was carrying a dark backpack and wearing blue jeans, a light-colored T-shirt, and black shoes. McDonald also identified Thompson in two still photographs from different areas of the store.

Cynthia Doumit, who was working in the store fragrance department near the outside exit on August 30, testified that on that date she noticed a man lingering in the fragrance department for about two hours. Because the man's behavior was unusual, she called security. After making her call, Doumit remembered hearing screaming and yelling coming from the nearby bathroom and shortly afterwards she saw a man running through the store. At that point, the man who had been lingering in the fragrance department walked away. A few minutes later, Doumit saw McDonald, who

seemed shaken, come out of the bathroom. Doumit recalled that the police arrived shortly after the incident.

A detective from the Douglasville Police Department who responded to the emergency call, testified that he went immediately to the scene. The detective recalled that he reviewed the mall video surveillance footage, which showed two men leaving a restroom, running into the department store, and later running out of it into the parking lot. The detective testified that he took a screenshot from the video of the two men standing outside the men's restroom on the lower level; the video showed that one of the men was wearing light-colored jeans, black sneakers, a light T-shirt, and carrying a dark backpack.

About a week after the incident, the detective learned pertinent information about the suspect's identity and obtained a search warrant for Thompson's house. In the ensuing search, from Thompson's locked bedroom, officers found and seized clothing and a backpack which matched those from McDonald's testimony and the store surveillance video, along with a gun replica, which was found in the backpack. The detective then obtained arrest warrants for Thompson.

One of Thompson's friends and neighbors also testified at trial, stating that Thompson admitted to her that he was involved in the robbery at the mall at which the department store was located, and that he further admitted that he held a person at gunpoint in a restroom. This friend also stated that Thompson told her that the gun he used in the crime was not a real gun.

Thompson's defense at trial was misidentification; he argued that because McDonald was facing the wall at the urinal he did not see his assailant come out of the bathroom stall, and that he did not turn around until he grabbed for the weapon. Following his conviction, he filed a timely motion for new trial and here appeals its denial.

1. Thompson argues that the trial court erred in overruling his objections and admitting the store surveillance videotape which showed a man wearing clothes matching those McDonald had described fleeing the area near the men's room. As he argued at trial, Thompson claims that the State did not establish a sufficient foundation under OCGA § 24-9-923 (c) because McDonald was neither the operator nor controller of the videotape equipment and the recording was not made in his presence. Thompson also argues that the videotape did not show the date and time of

the recording and that the State failed to show that the recording was made contemporaneously with the events depicted therein. We reject Thompson's arguments and conclude that the trial court did not abuse its discretion in admitting the video footage.

"We review the trial court's decision to admit evidence for an abuse of discretion." (Citation and punctuation omitted.) *Moore v. State*, 305 Ga. 251, 253-254 (2) (824 SE2d 377) (2019). OCGA § 24-9-923 (c) sets forth the standards for admitting video recordings created by unmanned cameras such as the store surveillance video the trial court admitted here.[1] *Brannon v. State*, 298 Ga. 601,

[1] The statute provides in pertinent part:

Subject to any other valid objection . . . video recordings . . . produced at a time when the device producing the items was not being operated by an individual person or was not under the personal control or in the presence of an individual operator shall be admissible in evidence when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered, provided that, prior to the admission of such evidence, the date and time of such . . . video recording shall be contained on such evidence, and such date and time shall be shown to have been made contemporaneously with the events depicted in such . . . video recording.

608-609 (5) (783 SE2d 642) (2016); see generally OCGA § 24-9-901 (b) (1) (setting forth the overarching evidentiary authentication and identification requirements). Under the specific parameters of OCGA § 24-9-923 (c), "videotapes created by unmanned cameras 'shall be admissible in evidence when the court determines, based on competent evidence presented to the court,' that the video tends to reliably show the fact or facts for which it is offered." *Brannon*, 298 Ga. at 609; see also *Yancey v. State*, 342 Ga. App. 294, 300 (2) (802 SE2d 702) (2017) (finding no abuse of discretion by the trial court in admitting cell phone recording of livestream video when witness testified that he watched the surveillance feed live and recorded it on his phone).

In this case, McDonald, the crime victim, testified that the surveillance videotape accurately portrayed the events he witnessed and that the recording had not been altered in any fashion. Additionally, McDonald testified that he was familiar with the store's video system, that he previously had repaired many of the store cameras, that he retrieved video recordings as part of his work, that he obtained the relevant footage in this case, and that when he obtained the footage the system appeared to be

OCGA § 24-9-923 (c).

functioning properly. McDonald, who observed the entire occurrence, was an appropriate witness to authenticate the videotape.

Similarly, given the factual corroboration of the videotaped events, we find no merit to Thompson's arguments that the videotape was improperly admitted because it did not show a date or time stamp. Although OCGA § 24-9-923 (c) "requires that the videotape show the date and time the recording was made, the fact that the date-time stamp does not reflect the actual time when the images were captured goes to the weight to be given the evidence, not its admissibility." (Citations and punctuation omitted.) *Brannon*, 298 Ga. at 609 (5). Similarly, "[w]here a video or photograph lacks accurate date and time stamps, its admission may nonetheless be proper upon additional corroboration." *Dixon v. State*, 300 Ga. App. 183, 185 (2) (684 SE2d 679) (2009) (decided under similar predecessor statute, OCGA § 24-4-48 (d)); see also OCGA § 24-9-923 (d) (providing that the Code section "shall not be the exclusive method of introduction into evidence of . . . video recordings . . . but shall be supplementary to any other law and lawful methods existing in this state."). Here, in addition to McDonald's testimony which corroborated the events themselves, he affirmed that he pulled the clip from the system soon after the crime. Likewise, the

detective who responded to the emergency call testified that when he arrived at the store shortly after the incident, he witnessed McDonald retrieving the relevant store footage. Based on this additional corroboration, we find no error. *Dixon*, 300 Ga. App. at 185 (2) (trial court did not abuse discretion in admitting video recording that lacked date and time stamps based upon additional corroboration).

2. Thompson argues that the trial court erred in charging the jury only on armed robbery and failing to charge the jury, sua sponte, on the lesser included offense of robbery by intimidation. In raising this enumeration, Thompson concedes that he failed to submit a written request on the lesser crime, and failed to object to this omission either at the charge conference or after the court instructed the jury.[2] Nevertheless, he argues that the court plainly erred by failing to instruct the jury regarding robbery by intimidation because McDonald was not facing his assailant when the knife was removed from his pants and could not have seen the gun. Therefore, Thompson posits, there was slight evidence to support the lesser charge.

Because Thompson did not raise this issue in the trial court, our review is limited to "plain error." *State v. Kelly*, 290 Ga. 29, 31-32 (1) (718 SE2d 232) (2011);

---

[2] Similarly, Thompson did not raise this argument in his motion for new trial or amended motion for new trial.

see also OCGA § 17-8-58 (b). "To demonstrate plain error with respect to a jury charge, it must be shown that the instruction was erroneous, that the error was obvious, and that there is a reasonable probability that the erroneous instruction affected the outcome of trial." *Hernandez-Garcia v. State*, 322 Ga. App. 455, 460 (2) (745 SE2d 706) (2013). If these standards are met, "we may exercise our discretion to reverse if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." (Citation and punctuation omitted.) *Morris v. State*, 303 Ga. 192, 197 (V) (811 SE2d 321) (2018). "A written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." (Citation and punctuation omitted.) *Hahn v. State*, 356 Ga. App. 79, 81 (2) (846 SE2d 258) (2020). However, the trial court does not err by failing to give the charge "if the state's evidence establishes all the elements of an offense, and there is no evidence raising the lesser offense." (Citation and punctuation omitted.) Id.

"Under OCGA § 16-8-41 (a), a person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or immediate presence of another by use of an offensive weapon or any replica, article,

10

or device having the appearance of such weapon." (Citation and punctuation omitted.) *Espinoza v. State*, 243 Ga. App. 665, 666 (1) (534 SE2d 127) (2000). Meanwhile, one commits the offense of robbery by intimidation when, "with intent to commit theft, he takes property of another from the person or the immediate presence of another by intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another." (Punctuation omitted.) Id. at 666 (2); see also OCGA § 16-8-40 (a) (2). Furthermore, "[t]he presence of an offensive weapon or the appearance of such may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon was neither seen nor accurately described by the victim." *McCluskey v. State*, 211 Ga. App. 205, 207 (2) (438 SE2d 679) (1993). Moreover, the offense of armed robbery encompasses "those situations which create a reasonable apprehension in the victim that an offensive weapon is being used; hence, it is immaterial whether such apprehension is created by use of the sense of vision or by any other sense, provided that the apprehension is reasonable under the circumstances." (Emphasis omitted.) Id. at 208 (2).

Here, McDonald testified that he felt the gun on his neck as Thompson removed the knife from his pants pocket. The trial evidence authorized a finding that McDonald had a reasonable apprehension that Thompson was threatening him with a gun to persuade him to give him his keys, wallet, and money. See *Faulkner v. State*, 260 Ga. App. 794, 794-795 (581 SE2d 365) (2003) (affirming armed robbery conviction when victim saw defendant's hand, which was covered with a sock and appeared to contain a gun-shaped object, and later defendant pressed the sock which "'felt like . . . a gun,'" into victim's back). In this case, there was no evidence to show that the robbery was committed without the use of a weapon or a replica, nor was there any evidence that the robbery was committed through the use of intimidation. Because the evidence shows only the completion of the greater offense of armed robbery, the trial court did not err by not charging the lesser offense. See *Jordan v. State*, 239 Ga. 526, 527 (2) (238 SE2d 69) (1977) (the evidence showed defendant committed an armed robbery, thus in the absence of a request, there was no error in court's failure to charge on robbery by use of force, intimidation or sudden snatching); *Brinson v. State*, 245 Ga. App. 411, 413-414 (2) (537 SE2d 795) (2000) (when the uncontradicted evidence showed completion of armed robbery and no evidence was

presented that a weapon was not used in the robbery, the defendant was not entitled to a charge on the lesser included offense of robbery by intimidation). For the above reasons, we find no error in the court's charge.

*Judgment affirmed. Dillard, P. J., and Padgett, J., concur.*