**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 15, 2015

# In the Court of Appeals of Georgia

A15A0057. WATFORD v. THE STATE.

ANDREWS, Presiding Judge.

Following a jury trial, Andre Craig Watford was convicted of two counts of making a false statement, two counts of forgery in the first degree, giving false information to a law enforcement officer, driving with a suspended license, speeding, and bail jumping. Watford appeals following the denial of his motion for new trial, arguing that the evidence was insufficient to support his convictions and evidence of other crimes or wrongs was improperly admitted at trial. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, *Browder v. State*, 294 Ga. 188, 191 (1) (751 SE2d 354) (2013), the evidence at trial showed that at approximately 2:00 a.m. on January 16, 2012, an officer with the Cobb County Police

Department conducted a traffic stop of a silver 2005 Acura TSX on Interstate 20 after determining with a laser device that the vehicle was traveling 80 miles-per-hour in a 60 mile-per-hour zone. The officer identified Watford at trial as the driver of the vehicle. The driver, who was accompanied by a female passenger, did not have a driver's license with him, and he identified himself as Jamal Hayes and gave a date of birth of December 4, 1987. The driver stated that he had a driver's license from Washington D. C. The officer, however, was unable to find a Jamal Hayes with a Washington D. C. driver's license with the field reporting system in his vehicle, but he found a Jamaal Hayes with a Washington D. C. driver's license and a December 4, 1987 date of birth. The officer wrote the driver a citation for speeding and a separate citation for not having a license on his person. The driver signed both citations as Jamal Hayes. Although the officer was suspicious, he permitted the driver to leave after he wrote the citations.

On February 22, 2012, the officer received a call from Monica Hayes, who lived in Washington D. C. and stated that her son Jamaal Hayes ("Hayes") had received paperwork in the mail concerning a traffic citation in Georgia. The officer talked to Hayes on the same day and told Hayes that if he was not the driver of the Acura on the evening in question, he should tell the officer who in Atlanta would be

using his name and information. Hayes provided Watford's name. The officer conducted a search of a database that provides information on other police reports from jurisdictions in the Atlanta area and found an incident report involving Andre Watford, which listed a date of birth. The officer located a driver's license photo of Watford and also found a Facebook page for an Andre Watford who lived in the Atlanta area. The officer testified that he had no doubt that the person in the driver's license photo and featured in pictures on Facebook was the driver from the January 16, 2012 traffic stop. The officer recognized distinctive blemishes or marks on Watford's forehead. After finding the photographs of Watford and contacting Watford by telephone, the officer secured a warrant for Watford's arrest. After viewing a photograph of Hayes at trial, the officer stated that Hayes was not the driver involved in the stop.

Hayes testified at trial that he met Watford in Washington D. C., he lived in Atlanta from 2006 to 2009, and he and Watford were roommates in Atlanta. He testified that he was not in Atlanta on January 16, 2012 and was not stopped for speeding on Interstate 20. Hayes looked at the signatures on the two citations the officer wrote that night and stated that they were not his. Hayes explained that he gave the officer Watford's name because they were roommates previously and

3

Watford had used his information before. He said that when he was visiting Atlanta in 2011 and riding in a car Watford was driving in the early morning, Watford was pulled over by police and told the officer he was Hayes. Hayes told Watford not to use his information again.

Carlisha Martin testified that she and her ex-husband owned the Acura involved in the traffic stop at issue. She testified that she had known Watford for five years and he was a good friend. Martin stated that Watford used to borrow her car but had recently started driving a red Mercedes he received from his mother, who lived in Maryland. She testified that she was not in the car when it was stopped on January 16, 2012, and that her ex-husband was not driving the car in January 2012. Martin could not recall if Watford was driving the car on the date of the stop but also added "[i]t wouldn't be anybody but either him or myself."

A former assistant district attorney who had previously handled the charges against Watford testified that an accusation against Watford was filed and that jury selection for a jury trial took place on February 25, 2013. At the end of the day, the trial judge instructed Watford and counsel to return the next day at 1:30, but Watford, who was out on bond, did not appear. A bench warrant was issued and a mistrial was declared. A copy of an April 20, 2010 notice of the pending suspension of Watford's

4

driver's license and his subsequent November 2010 conviction in Atlanta Municipal Court of driving while his license was suspended were admitted into evidence at trial.

On the first day of trial prior to voir dire, the trial court ruled that the State would be permitted to call an officer with the Atlanta Police Department to present testimony concerning other alleged crimes or wrongs by Watford pursuant to OCGA § 24-4-404 (b). The Atlanta officer testified that on May 23, 2013, at 1:00 a. m. he pulled over a red Mercedes after it rolled through a stop sign. The Atlanta officer identified Watford at trial as the man he pulled over that night, and a photograph of Watford as he appeared that night was admitted into evidence. Watford told the Atlanta officer that his name was Stephen McKenzie and that he had a Maryland driver's license but it was not on him that night. The Atlanta officer could not find a Maryland driver's license with the name and date of birth the driver gave him. The Atlanta officer asked Watford for his phone number, and Watford gave him a number that was the same as his phone number except for one digit. The Atlanta officer learned that the Mercedes was registered in Maryland to Andrew Craig Watford and Lenora McKenzie Watford. Watford was arrested and taken to the city jail.

1. Watford challenges the sufficiency of the evidence underlying his convictions.

On appeal of a criminal conviction, this Court's duty is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The appellant no longer enjoys the presumption of innocence. Moreover, the Court does not re-weigh the evidence or resolve conflicts in testimony, but rather defers to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Walker v. State*, 282 Ga. 406, 406 (651 SE2d 12) (2007).

Watford first maintains that the State failed to present evidence to support his convictions for the charges other than bail jumping because the State did not establish that he was the driver of the silver Acura the Cobb County officer stopped on January 16, 2012. Watford erroneously argues that there was no "positive proof" he was the driver because the State did not provide photographs or video from the night in question, fingerprint evidence or handwriting analysis. In fact, the State presented direct evidence that Watford was the driver because the Cobb County officer testified that when he saw photographs of Watford, he immediately recognized him as the driver and identified Watford at trial as the driver he stopped. "Identity is a question for the trier of fact; where a witness identifies a defendant, the credibility of the

6

witness making that identification is not to be decided by this Court." (Footnote and punctuation omitted.) *Gorman v. State*, 318 Ga. App. 535, 537 (1) (a) (734 SE2d 263) (2012). The Cobb County officer's testimony, alone, was sufficient to allow the jury to conclude that Watford was the driver he pulled over on January 16, 2012. See *Morris v. State*, 330 Ga. App. 750, 751 (1) (769 SE2d 163) (2015) (officer's identification of defendant as driver he arrested for DUI less safe was sufficient for jury to conclude defendant was driver). The State presented additional, circumstantial evidence corroborating Watford's identity. Hayes offered testimony sufficient to explain how Watford would know his date of birth and testified that he was not in Atlanta on January 16, 2012. Hayes testified that Watford had previously identified himself as Hayes when Watford was pulled over by police. In addition, Martin, who owned the silver Acura, testified that Watford sometimes borrowed the vehicle and that she did not know of anyone else besides Watford who would have been driving it when it was stopped on January 16, 2012. As discussed in Division 2, the Atlanta officer's testimony about a January 2013 traffic stop in which Watford provided a false name and date of birth was also relevant evidence as to Watford's identity.

With respect to the bail jumping conviction, Watford argues that the State failed to prove that he had notice that he was required to report to court for trial on

February 26, 2013 at 1:30 p. m. We disagree. The former assistant district attorney who handled the charges testified that Watford was present on February 25, 2013 when the trial court provided instructions to return the following day at 1:30 p.m.

2. Watford argues that the trial court erred in ruling that the State could call the Atlanta officer to testify concerning Watford's other alleged crimes or wrongs.

Because Watford's trial was held after January 1, 2013, Georgia's new Evidence Code governs this issue. *Bradshaw v. State*, No. S14A1365, 2015 WL 854111, at *4 (Ga. Mar. 2, 2015). Our Supreme Court has stated that: "Our new Evidence Code was based in large part on the Federal Rules of Evidence. And where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance." *Parker v. State*, 296 Ga. 586 (3) (a) (769 SE2d 329) (2015). Where, however, "conflicts were found to exist among the decisions of the various circuit courts of appeal interpreting the federal rules of evidence, the General Assembly considered the decisions of the 11th Circuit Court of Appeals." Ga. L. 2011, p. 99 § 1.

The admissibility of evidence of other crimes or wrongs is governed by OCGA § 24-4-404 (b), which tracks Federal Rule of Evidence 404 (b) and provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We apply the Eleventh Circuit's three-part test to determine the admissibility of other crimes and wrongs under OCGA § 24-4-404 (b) as follows:

(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act.

*Bradshaw*, supra, 2015 WL 854111, at *4, citing *United States v. Ellisor*, 522 F3d 1255, 1267 (11th Cir. 2008). Watford did not dispute at trial and does not dispute now that he was the driver in the May 23, 2013 stop, so the third prong is not at issue. We review the trial court's decision to admit evidence under OCGA § 24-4-404 (b) for a clear abuse of discretion. Id.

The trial court determined that the Atlanta officer's testimony was relevant to the issue of identity. When evidence of other crimes or wrongs

is introduced to prove identity, the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the

9

offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi. The extrinsic act must be a signature crime, and the defendant must have used a modus operandi that is uniquely his.

(Citations and punctuation omitted.) *U. S. v. Whatley*, 719 F3d 1206, 1217 (11th Cir. 2013); see also *Harper v. State*, 330 Ga. App. 561, 566 (2) (b) (768 SE2d 755) (2015). While there are some differences between the January 2012 and May 2013 stops, they are similar in that both stops occurred in the Atlanta area but the driver, who did not have a license, claimed to have a license from the jurisdictions of Washington D. C. or Maryland. Watford has connections with the Washington D. C./Maryland area, as shown by testimony that Watford and Hayes met in Washington D. C. and that Watford's mother lived in Maryland. In both instances, the driver provided information that was partially accurate. In the January 2012 stop, the driver misspelled Hayes' first name by one letter. In the second stop, Watford provided a phone number that was accurate except for one digit. With respect to the January 2012 stop, the State sought to prove that Watford used the name of a close friend; in the second stop, Watford provided a name apparently connected with his family. The registration information the Atlanta officer obtained for the red Mercedes showed that the vehicle was registered to two Maryland owners, one of whom was Lenora

10

McKenzie Watford. Based on Martin's testimony that Watford's mother lived in Maryland and that his mother gave him a red Mercedes, the jury could infer that the Lenora McKenzie Watford is Watford's mother and that Watford drew on a family name when he identified himself as Stephen McKenzie. Based on the foregoing, we conclude that the trial court was authorized to conclude that other crimes/wrongs evidence was relevant to the issue of Watford's identity. See *U. S. v. Vigne*, 571 Fed. Appx. 932, 934 (11th Cir. 2014) (in case in which defendant was accused of using fake New York driver's license to redeem money order and had stolen Bank of America debit card at time of arrest, trial court did not abuse discretion in admitting evidence that defendant previously was convicted of possession of forged instrument after attempting to purchase laptop using stolen Bank of America debit card and fake New York driver's license).

The determination of whether the probative value of evidence of other wrongs or crimes outweighs its prejudicial effect "lies within the discretion of the [trial] court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." (Citation and punctuation omitted.) *U. S. v. Perez*, 443 F3d 772, 780 (11th Cir. 2006). Watford

argued at trial that the prejudicial effect of the other crimes/wrongs evidence outweighed its probative value because the State had other evidence of identity and argues on appeal that admitting the evidence was unnecessary. These arguments are disingenuous, as Watford's very strategy at trial and on appeal has been to challenge the sufficiency of the evidence regarding Watford's identity. At trial, for example, Watford's counsel cross-examined the Cobb officer about why he did not have a functioning video recording system in his vehicle during the stop and his ability to identify Watford by looking at photographs over a month after the stop and argued in his closing argument that the officer's testimony about recognizing Watford was not credible. Considering all of the circumstances, including the similarities between the traffic stops, the time gap between them (which was not unduly long), and the State's need for the evidence, we find no abuse of discretion in the trial court's decision that the probative value of the evidence of the May 2013 stop outweighed its prejudicial effect.

3. To the extent that Watford contends that the trial court erred ruling that evidence that he was on first offender probation at the time of the crimes was admissible to show his motive for providing false information to the Cobb officer, his claim fails. Permitting the introduction of evidence of Watford's probationary status

for that purpose would not constitute an abuse of discretion. See *U. S. v. Key*, 76 F3d 350, 354 (11th Cir. 1996) (in case involving charges of bank fraud and making false statements on loan application, admission of prior judgments against defendant did not contravene Federal Rule of Evidence 404 (b); judgments were evidence that defendant had motive to misrepresent his identity in order to obtain credit). In any event, Watford has not shown by citation to the record that evidence of his probationary status was admitted at trial.

*Judgment affirmed. Miller and Branch, JJ., concur.*