**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 15, 2017**

# In the Court of Appeals of Georgia

A17A0503. MARTIN v. THE STATE.

ANDREWS, Judge.

Following a jury trial, Cuba Alaska Martin III was convicted of armed robbery. Martin appeals, asserting that the trial court erred in admitting identity evidence under OCGA § 24-4-404 (b). Finding no error, we affirm.

Viewed favorably to the verdict, *Watford v. State*, 332 Ga. App. 499, 502 (1) (773 SE2d 452) (2015), the evidence shows that on December 11, 2012, Oralia Reyes-Gaucin was walking home from work along West Avenue in Gainesville, talking on her cell phone. She noticed two men walking on the other side of the street, but did not pay much attention to them. Suddenly, one of the men approached her from behind. He moved in close, demanded her phone, and snatched it from her hand. He then reached for Reyes-Gaucin's purse. As the two struggled, the man pushed

Reyes-Gaucin to the ground. He grabbed her purse while placing a small, black object that she believed to be a gun against her head. Reyes-Gaucin closed her eyes, and the two men fled. A short time later, she saw a white vehicle leaving the area.

Reyes-Gaucin reported the robbery to police, describing her assailants' race and height. She also indicated that the gunman wore a mask and that both were dressed in dark clothing. Reyes-Gaucin's debit card, which had been in her purse, was used at a gas station later that evening. The next morning, a police officer located Reyes-Gaucin's purse on a street near the robbery scene. Her debit card was inside the bag, but her cash was missing.

The investigator assigned to the case had few initial leads. In the Spring of 2013, however, he received information implicating Ciera Wilson in the crime. The investigator interviewed Wilson, who indicated that Martin and his cousin, Rytavious Ellison, had robbed Reyes-Gaucin, then used her debit card to fill several cars with gasoline. The police searched a white car belonging to Martin's sister and discovered a small, black handgun bearing Martin's fingerprint under the front seat.

Wilson testified against Martin at trial, providing the following account of events. On the night of the robbery, she and Ellison got into her car, and Ellison instructed her to follow behind Martin, who was driving a white SUV. They parked

off of West Avenue, and Ellison and Martin left the area, instructing Wilson to wait for them in the car. Approximately 15 to 20 minutes later, Wilson heard a woman scream, and Ellison and Martin ran back to the cars. Martin was holding a small, dark handgun, and Wilson observed him throw a purse onto the passenger seat of his vehicle. He also had a ski mask with him. Ellison told Wilson to "go really fast," and she sped away, traveling in the opposite direction of Martin. The three met up at Martin's house a short time later, after which Martin and Ellison rifled through the purse, took the cash, and went to the gas station. Ellison later told Wilson that Martin had approached a woman on the street and taken her purse at gunpoint.

1. On appeal, Martin argues that the trial court erred in admitting other-crimes evidence under OCGA § 24-4-404 (b). Specifically, the State presented evidence that on January 19, 2013, another Hispanic woman walking in Gainesville was robbed by two men wearing dark clothing and traveling in a white SUV. According to the victim, Lucina Mayo-Romero, one of the men pointed a gun at her, while the other snatched her purse from her arm. A few days later, her purse was found discarded on the side of the road. The victim identified Martin as the man who had snatched her purse. She further testified that the small gun seized from the car belonging to Martin's sister was similar to that used by the gunman.

3

Pursuant to OCGA § 24-4-404 (b),

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A trial court properly admits other-crimes evidence when (1) the evidence is relevant to an issue other than the defendant's character; (2) its probative value is not substantially outweighed by undue prejudice; and (3) there is sufficient proof for the jury to find by a preponderance of the evidence that the defendant committed the other act. See *Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016). We review the admission of such evidence "for a clear abuse of discretion," making "a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Id.

Martin argues that evidence of the January 19, 2013 robbery was not relevant to any issue other than character. We disagree. The State offered the evidence to establish, among other things, Martin's identity as a participant in the Reyes-Gaucin robbery. Other-crimes evidence may be admitted as proof of identity if it is

4

sufficiently similar to the charged crime to "mark the offenses as the [defendant's] handiwork." Id. at 607. In other words, "[t]he extrinsic act must be a signature crime, and the defendant must have used a modus operandi that is uniquely his." *Watford*, supra at 504 (2).

The two incidents at issue here occurred within approximately one month of each other, and both involved the armed robbery of a Hispanic woman walking alone in Gainesville, during which a purse was snatched from the victim. The perpetrators wore dark clothing and used a small handgun, as well as a white SUV, to carry out the crimes. In both instances, the stolen purses were later found discarded on a roadway. According to Wilson, Hispanics were the target of the robberies because "they worked . . . [and] [t]hey had all the money." Finally, Mayo-Romero positively identified Martin as one of her assailants in the January 19, 2013 robbery.

Given these circumstances, the trial court was authorized to find that the modus operandi for each robbery "was sufficiently similar to mark the offenses as [Martin's] handiwork." *Brannon*, supra. Furthermore, although various evidence, including Wilson's testimony, connected Martin to the Reyes-Gaucin crime, additional proof of identity was certainly relevant. See OCGA § 24-14-8 (testimony of an accomplice

5

must be corroborated to sustain a felony conviction). The trial court, therefore, properly admitted evidence of the January 19, 2013 robbery.

2. Alternatively, Martin argues that Mayo-Romero's trial testimony identifying him as the purse snatcher should have been excluded. Again, we disagree.

The record shows that Mayo-Romero was in Mexico at the time of trial and testified through a Skype video feed. During her testimony, the prosecutor showed Mayo-Romero a picture of Martin and asked whether she recognized "this man." When Mayo-Romero responded, "yes," the prosecutor inquired, "Who is this?" Mayo-Romero stated: "The one who snatched my bag." According to the State, the prosecutor used a photograph to obtain the identification because "the testimony was taken via Skype and [Mayo-Romero] was unable to scan the courtroom" to identify Martin in person.

Martin contends that the in-court identification based on a single photograph was impermissibly suggestive, improper, and unreliable. Martin, however, never raised this argument below. Although he objected to the other-crimes evidence and questioned why Mayo-Romero had not previously made an identification, he did not challenge the identification process as impermissibly suggestive. Admission of the evidence, therefore, is only subject to review for "plain error affecting substantial

6

rights." *Jones v. State*, 299 Ga. 40, 42 (2) (785 SE2d 886) (2016) (punctuation omitted). Under the plain error standard:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

Id. (punctuation omitted).

In this case, reversal is not authorized because no error occurred. Martin's challenge to the identification testimony relies upon cases involving suggestive *pretrial* procedures that allegedly tainted a witness's subsequent in-court identification. See, e.g., *Walker v. State*, 295 Ga. 688, 692-693 (3) (763 SE2d 704) (2014); *Wright v. State*, 302 Ga. App. 101, 104-105 (4) (690 SE2d 220) (2010); *Bradley v. State*, 152 Ga. App. 902, 902-904 (264 SE2d 332) (1980). Such cases

address the extra safeguards developed by courts to protect against potential pretrial misidentification. Our Supreme Court has explained:

> [b]ecause pretrial identification procedures occur beyond the immediate supervision of the court, the likelihood of misidentification in such cases increases, and courts have required that pretrial identification procedures comport with certain minimum constitutional requirements in order to insure fairness.

*Ralston v. State*, 251 Ga. 682, 683 (2) (309 SE2d 135) (1983).

These extra safeguards do not apply here. As Martin concedes, Mayo-Romero made no pretrial identification. Authorities had not previously shown her any photographs, and she did not identify Martin as the perpetrator before trial. Her testimony constituted an in-court identification that was "subject to the same rules of evidence, witness credibility, and cross-examination as all testimony in a criminal trial." Id. at 683-684; see also *Ivey v. State*, 277 Ga. 875, 877 (4) (b) (596 SE2d 612) (2004) ("The 'totality of the circumstances' test for reliability . . . applies to extra-judicial pretrial identification procedures such as lineups, showups and photographic displays, not to the in-court procedures used in this case.") (punctuation omitted). Accordingly, the trial court did not err in admitting the identification testimony. See *Ralston*, supra; *Ivey*, supra.

*Judgment affirmed. Ellington, P. J., and Rickman, J., concur in judgment only.*