**THIRD DIVISION
DOYLE, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 23, 2024**

# In the Court of Appeals of Georgia

A24A1032. OLUSHOLA v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Oluwole Olushola was convicted of robbery,[1] three counts of financial transaction card theft,[2] and three counts of identity fraud.[3] The trial court denied Olushola's amended motion for new trial, and Olushola appeals, arguing that (1) the evidence was insufficient to support the verdict; (2) the trial court erred by failing to apply the rule of lenity when sentencing him for identity fraud; (3) the guilty verdict for robbery was repugnant and therefore void; and (4) the trial court abused

---

[1] See OCGA § 16-8-40 (a) (1). The jury acquitted Olushola of exploitation or intimidation of an elder person, OCGA § 16-5-102 (a).

[2] See OCGA § 16-9-31 (a) (1).

[3] See OCGA § 16-9-121. The State withdrew three other counts of identity fraud, and the trial court entered an order of nolle prosequi as to those counts.

its discretion by admitting evidence of other acts. For the reasons that follow, we affirm.

Viewed in favor of the verdict,[4] the record shows that on the morning of June 4, 2019, 84-year-old Sondra Dillon drove to a local strip mall in Cobb County to meet friends to drive together to a museum. When Dillon saw one of her friends driving toward her, she exited her vehicle so the friend would see her; at that time, a gray vehicle with dents on the driver's side approached and blocked her path. A man jumped out of the car, grabbed Dillon's purse, punched her in the eyes and forehead, and knocked her to the ground. Dillon sustained bruising on her arm from the assailant taking her purse, bruising on her knees and body from falling on the ground, and a hematoma on her head.

Dillon testified that the incident happened so quickly that she could not identify the assailant, who had covered his face with his hands, but she described him as an adult male, clean shaven with short curly hair, wearing a dark colored shirt and dark pants. At trial, Dillon testified that the assailant did not have the same hairstyle as Olushola and that he had "changed his look."

---

[4] See *Anderson v. State*, 350 Ga. App. 369, 372 (829 SE2d 453) (2019). See also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Dillon's purse, containing her car keys, checkbook, phone, and wallet, was taken by the assailant; her wallet contained a Delta Community Credit Union ("DCCU") Visa card, an American Express card, a Costco Visa card, and a Citibank card at the time. Dillon told officers at the scene that she had $20 in cash in her wallet but testified at trial that she had $250 in cash in her purse.

Lawrence Tanowitz testified that he drove his wife, Tama, to the same shopping center that day to drop her off to meet Dillon to go the museum. The Tanowitzes arrived and parked before Dillon arrived, and Lawrence saw Dillon walking from her car with her purse when a gray car with a paper license plate and dents on the driver's side stopped near her. The car had only one occupant, and it blocked Lawrence's view of Dillon. When the car pulled away, Dillon was on the ground, so the Tanowitzes exited their car and ran to her aid. Lawrence noticed that Dillon's purse was missing, and he heard her say that the assailant had punched her.

Lawrence also saw that Dillon had visible bruises, and he called 911, a recording of which was played for the jury. Lawrence described the driver of the car as a Black male, but he could not identify the person at the 2022 trial. Tama testified that when her husband shouted that Dillon was on the ground, she saw a man who was wearing

a baseball cap get into the gray vehicle and leave; she also heard Dillon shout that the man had her purse. The same morning as Dillon's incident, her purse with her identification was found in a different shopping center lot in a neighboring county.

Officers responded to Lawrence's 911 call, and they observed Dillon with visible injuries. Based on the description of the assailant's vehicle, officers were able to locate images of it in footage from one of the store's surveillance recordings. Photographs were made from the footage, and the vehicle was identified as a 2005 Toyota Camry with a paper tag, for which vehicle officers issued a Be On the Lookout ("BOLO") call that was sent to neighboring law enforcement agencies.

Based on the BOLO call, a Gwinnett County detective contacted the Cobb County detective assigned to the case because a similar incident had occurred in Gwinnett on May 22 — 13 days prior to Dillon's incident. The Gwinnett case file included an incident report and the victim's cell phone video, which depicted a gray Camry with the same body damage. The video also had images of the vehicle's temporary tag and images of the assailant. The Cobb detective ran the tag number and discovered that Olushola was the registered owner of the vehicle, which was

purchased on May 10, 2019, three days before the Gwinnett incident; the detective also obtained a copy of his driver's license photograph and other information.

Two days after Dillon's incident, the Cobb detective interviewed Dillon and obtained information for her credit cards as well as a list of transactions on the cards that had not been made by Dillon. Business records of the cards were admitted into evidence. Six unauthorized transactions were made on Dillon's DCCU Visa on the day of the incident including a charge at a Chevron, a declined charge at a Publix, a charge at a CVS, a charge at a QuikTrip, an attempted charge at Northridge Bottle Shop, and a charge at a second Chevron.[5] None of the transactions or attempted transactions occurred in Cobb County. Dillon denied making or attempting to make any of these charges and denied authorizing anyone else to make the charges.

Surveillance footage from Northridge Bottle Shop, Publix, CVS, and Quiktrip was played for the jury. The Northridge Bottle Shop showed the cash register where a Black male dressed in a dark baseball cap, black Nike shirt, and black pants approached the counter to purchase items. Surveillance video from Publix showed a

---

[5] The three withdrawn counts of identity fraud involved the attempted transactions at Publix and the Northridge Bottle Shop, and the charge at the second Chevron location.

Black male in a black "Just Do It" shirt and black pants (but no baseball cap) attempt to purchase cereal (this charge was declined). Surveillance video from the CVS showed a Black male with a black "Just Do It" shirt purchase cologne. Surveillance video from the Quiktrip showed a Black male in a black "Just Do It" shirt with black pants make two purchases, one with a card and one with cash.

After the Cobb detective arrested Olushola, two bottles of cologne matching the cologne purchased from CVS were found in the Camry's glovebox. The Cobb detective also discovered that the Camry had a GPS system that pinged its location to the dealership, and she obtained a search warrant for the information, which was tendered to evidence. The GPS data corresponded with the locations of Dillon's incident, the location where her purse was discovered, and the various locations of the transactions and attempted transactions. In addition to the credit union visa charges, Dillon's Capital One card was used at Northridge Bottle Shop to make two purchases and then additional purchases in locations in Stockbridge, East Point, and Dunwoody.

In order to establish identity, the State presented evidence of the May 22 Gwinnett incident. That day, Chasity Gray shopped at a beauty store in Gwinnett County and was sitting outside the store on a curb waiting for an individual to pick her

up. She was holding a clear purse and browsing social media on her phone when Olushola approached her in his car and tried to talk to her. Feeling apprehensive, Gray began filming her conversation with Olushola, including video of his car. After feigning to drive away, Olushola quickly stopped, exited the Camry, and ran toward Gray, whom he punched in the chin. Olushola pushed her and fled with her purse, which contained her hotel key, debit card, makeup, identification, and other things. The GPS data also showed Olushola's vehicle stopping in the same location as the beauty store on the day of Gray's incident.

At the close of evidence, the jury returned its verdict, finding Olushola guilty of robbery; three counts of financial transaction card theft based on his taking of Dillon's DCCU Visa, American Express, and Costco Visa; and three counts of identity fraud, based on the DCCU Visa transactions at the first Chevron, CVS, and Quiktrip. The court sentenced Olushola to a term of twenty years to serve with thirteen[6] in confinement as to robbery by force, three years to serve in confinement for the three counts of financial transaction card theft (concurrent to each other and to

---

[6] Originally, the trial court sentenced him to ten years' incarceration for the robbery charge with the three year confinement term for financial transaction card theft running consecutive to the robbery sentence, but it later amended the sentence.

the robbery term), and ten years to serve with three in confinement as to the three counts of identity fraud (running concurrent to each other and the robbery count).[7]

Following a hearing on Olushola's amended motion for new trial, the trial court determined that the three counts of financial transaction card theft should have merged with the count of robbery by force for sentencing purposes, and it amended the sentence to that end. As to the other issues raised in Olushola's motion for new trial, the court declined to exercise its discretion under the general grounds, found that the evidence was sufficient to support the verdict, found that the rule of lenity did not apply, found that the jury's acquittal of Olushola for elder abuse and conviction of him for robbery by force were not repugnant, and found the introduction of other acts evidence was not unduly prejudicial. This appeal followed.

1. First, Olushola argues that the evidence was insufficient to support the verdict because it was based on circumstantial evidence that did not exclude every reasonable hypothesis other than guilt, and none of the witnesses to the incident nor Dillon identified him as the assailant.

---

[7] The identity fraud charges did not merge as a matter of law. See OCGA § 16-9-121 (c).

To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. When it meets this test, circumstantial evidence is as probative as direct evidence. Further, circumstantial evidence only must exclude every other reasonable hypothesis save the defendant's guilt, not every possible inference or hypothesis.[8]

In this case, the evidence (although circumstantial) excluded every reasonable hypothesis other than Olushola's guilt. Olushola's recently purchased vehicle was identified through GPS data as being in the vicinity of all the locations related to Dillon's incident and the later unauthorized uses of her credit cards at the applicable times. Olushola fit the general description of the assailant given by the Tanowitzes, and the jury could compare him to the photographs and videos of the individual using Dillon's cards at various locations and entering and exiting Olushola's vehicle on the day of the incident. Finally, cologne that matched that purchased from the CVS was discovered in the Camry's glovebox after his arrest.

---

[8] (Punctuation, citations, and emphasis omitted.) *Parker v. State*, 297 Ga. App. 384, 385 (1) (677 SE2d 345) (2009), quoting the predecessor statute of OCGA § 24-14-6.

Even if "evidence regarding a defendant's identity is entirely circumstantial, it need not exclude every conceivable inference or hypothesis—only those that are reasonable. Thus, to set aside the conviction it is not sufficient that the circumstantial evidence show that the act might by bare possibility have been done by somebody else."[9] In this case, it is not reasonable that some other unknown person with a general physical appearance similar to Olushola absconded with a vehicle recently purchased by Olushola, committed the acts in question, and then returned the vehicle to Olushola. And as for the inconsistent testimony by Dillon and the witnesses, issues of credibility and conflicts in the evidence are questions for the jury to resolve.[10] Accordingly, this enumeration is without merit, and the trial court did not err by denying the motion for new trial on this ground.

---

[9] (Citations and punctuation omitted; emphasis in original.) *Jernigan v. State*, 357 Ga. App. 415, 418 (1) (848 SE2d 707) (2020).

[10] See id. at 417 (1).

2. Relying on *McNair v. State*,[11] Olushola argues that the trial court erred by not applying the rule of lenity when it sentenced him to ten years to serve three years in confinement for the three counts of identity fraud instead of applying the maximum punishment of three years applicable to the crime of financial transaction card fraud.

> The rule of lenity applies when a statute, or statutes, establishes, or establish, different punishments for the same offense, and provides that the ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment. [T]he rule of lenity derives from the long-standing canon under the common law that penal statutes are to be strictly construed against the State and in favor of the accused. Thus, ambiguity in whether to sentence a defendant to the greater or lesser offense should be resolved in the defendant's favor.[12]

When it denied Olushola's amended motion for new trial on this ground, the trial court determined that Olushola could not have been charged with financial transaction card fraud for the counts at issue because he made the transactions outside

---

[11] 326 Ga. App. 516 (757 SE2d 141) (2014) (on remand from the Supreme Court of Georgia, applying lenity to reverse a conviction for identity fraud and remand for resentencing for financial transaction card theft, OCGA § 16-9-31 (a)). See also *State v. Hanna*, 305 Ga. 100, 105, n. 4 (2) (823 SE2d 785) (2019).

[12] (Citations and punctuation omitted.) *Smallwood v. State*, 310 Ga. 445, 451 (3) (851 SE2d 595) (2020), quoting *Hanna*, 305 Ga. at 103 (2); *Banta v. State*, 281 Ga. 615, 617 (2) (642 SE2d 51) (2007).

of Cobb County, where he was indicted.[13] The trial court reasoned that because venue was not proper if these counts had been charged as financial transaction card fraud, but venue was proper for the counts as charged as identity fraud based on the victim's residence in Cobb County,[14] the penalties for identity fraud applied instead of the penalties for financial transaction card fraud. Nevertheless, we have identified no case in which venue has been utilized for the purposes of applying the rule of lenity; therefore, we decline to adopt this reasoning at this time.[15]

---

[13] See OCGA § 16-9-40 (a) (stating that "the crime . . . shall be considered as having been committed in the county where the commission of the crime *commenced*") (emphasis supplied). Compare *Newsome v. State*, 183 Ga. App. 339 (1) (359 SE2d 11) (1987) (decided prior to the enactment of OCGA § 16-9-40, and explaining that venue for financial transaction card fraud exists where the card "was presented and goods were received"). The issue of the correct venue for this crime is not before us.

[14] See OCGA § 16-9-125 (stating that venue for identity fraud lies in "any county where the person whose means of identification or financial information was appropriated resides or is found, or in any county in which any other part of the offense took place, regardless of whether the defendant was ever actually in such county.").

[15] See *United States v. Canal Barge Co.*, 631 F3d 347, 353 (II) (6th Cir. 2011) ("[T]he rule of lenity is typically invoked only when interpreting the substantive scope of a criminal statute or the severity of penalties that attach to a conviction, not the venue for prosecuting the offense."). See also *Bulloch v. State*, 293 Ga. 179, 187 (4) (744 SE2d 763) (2013) ("Venue is a jurisdictional element of every crime, and the State has the burden of proving venue beyond a reasonable doubt."); *Trogdon v. State*, 176 Ga. App. 246, 247 (1) (335 SE2d 481) (1985) ("[If] venue is not established by the

The indictment charged Olushola with committing three counts of identity fraud by "willfully and fraudulently, without authorization, us[ing] identifying information concerning a person, to wit: [DCCU] financial transaction card number assigned to Sondra Dillon," (1) "to make a purchase at Chevron number 0201786 in Atlanta"; (2) "to make a purchase at a CVS in Sandy Springs"; and (3) "to make a purchase at a QuikTrip in Sandy Springs[.]" The counts also all alleged that Dillon was a resident of Cobb County. As indicted and without regard to the issue of venue, this conduct could have been indicted as identity fraud or financial transaction card fraud. But in order to determine whether lenity applies, we are required to look to the statutory language of the two crimes.[16] "[T]he rule of lenity is a rule of construction that is applied only when an ambiguity still exists after having applied the traditional canons of statutory construction. Therefore, the rule does not apply when the statutory provisions are unambiguous."[17]

---

[S]tate, . . . reversal of a conviction on this basis does not prevent retrial in a court where venue is proper and proven.").

[16] See *Sosebee v. State*, 317 Ga. 424, 427 (1) (893 SE2d 653) (2023).

[17] (Citations and punctuation omitted.) Id., quoting *Hanna*, 305 Ga. at 102 (2); *Banta*, 281 Ga. at 617 (2).

OCGA § 16-9-121 (a) (1) states that "[a] person commits the offense of identity fraud when he or she willfully and fraudulently . . . [w]ithout authorization or consent, uses or possesses with intent to fraudulently use identifying information concerning a person . . . ." OCGA § 16-9-33 (a) (1), on the other hand, states that

> [a] person commits the offense of financial transaction card fraud when, with intent to defraud the issuer; a person or organization providing money, goods, services, or anything else of value; or any other person; or cardholder, such person: Uses for the purpose of obtaining money, goods, services, or anything else of value: A financial transaction card obtained or retained or which was received with knowledge that it was obtained or retained [through financial transaction card theft or forgery.]

The language of the statutes is not ambiguous. Identity fraud may be proven by the defendant's fraudulent use of the victim's identifying information, which includes a variety of forms of information.[18] It does not require proof that the defendant used the information in order to acquire something of value, while this is an element of

---

[18] See OCGA § 16-9-120 (5). See, e.g., *Libri v. State*, 346 Ga. App. 420, 428 (2) (816 SE2d 417) (2018) (conviction for creation of a fake social media page of victim using pictures and personal information of victim); *Hernandez v. State*, 281 Ga. 559, 559-560 (1) (639 SE2d 473) (2007) (conviction for use of victim's social security number to obtain employment).

financial transaction card fraud.[19] Additionally, financial transaction card fraud can be proven only by the defendant's use of a financial transaction card and not the fraudulent use of any other identifying information of the victim.[20]

Thus, while Olushola's conduct could have subjected him to prosecution under both OCGA § 16-9-121 (a) (1) and OCGA § 16-9-33 (a) (1), the two statutes do not contain the same elements. Therefore, as the Supreme Court of Georgia has explained,

> that a single act may, as a factual matter, violate more than one penal statute does not implicate the rule of lenity. [Because of] the absence of a textual ambiguity between the statutes at issue, our review of [Olushola's] rule-of-lenity argument must end . . . . The rule of lenity simply has no application in this case, and this claim of error fails.[21]

---

[19] Compare OCGA § 16-9-121 (a) (1) with OCGA § 16-9-33 (a) (1).

[20] See OCGA § 16-9-33 (a) (1).

[21] (Citations and punctuation omitted.) *Sosebee*, 317 Ga. at 430 (1), quoting *Smallwood*, 310 Ga. at 452 (3). See also *Peacock v. State*, 314 Ga. 709, 723 (5) (878 SE2d 247) (2022) (holding that lenity did not apply to felony and misdemeanor versions of a statute because one required the finding that the defendant acted maliciously and the other did not); *Banta*, 281 Ga. at 618 (2) (holding that lenity did not apply because one statute required a showing of deception or false representation). Our decision in *McNair*, 326 Ga. App. at 519-522, does not require that we rule otherwise because that case involved the interplay of OCGA § 16-9-31 (a), financial transaction card *theft*, and OCGA § 16-9-121 (a), identity fraud, as well as a different factual scenario. Here, as

3. Olushola maintains that the jury issued a repugnant verdict when it found him guilty of robbery and acquitted him of elder abuse.

> [I]n *McElrath v. State*,[22] [the Supreme Court of Georgia explained that] there are three main categories of contradictory verdicts: (1) inconsistent verdicts,[23] (2) mutually exclusive verdicts,[24] and (3) repugnant verdicts. At issue here is whether [Olushola]'s convictions were repugnant. A truly repugnant verdict is rare. Repugnant verdicts occur when, in order to find the defendant not guilty on one count and

---

stated above, we hold that OCGA § 16-19-121 (a) (1), financial transaction card *fraud*, and OCGA § 16-9-33 (a) (1), identity fraud, require proof of different elements, and therefore, lenity does not apply.

[22] 308 Ga. 104 (839 SE2d 573) (2020) (vacating the judgment "because the not guilty by reason of insanity verdict on malice murder and the guilty but mentally ill verdict on felony murder based on aggravated assault required affirmative findings of different mental states that could not exist at the same time during the commission of those crimes as they were indicted, proved, and charged to the jury").

[23] See id. at 108 (2) (a) ("inconsistent verdicts occur when a jury in a criminal case renders seemingly incompatible verdicts of guilty on one charge and not guilty on another").

[24] See id. at 110 (2) (b) ("The term mutually exclusive generally applies to two guilty verdicts that cannot legally exist simultaneously. In such cases, where it is both legally and logically impossible to convict on both counts, a new trial should be ordered.") (punctuation omitted).

guilty on another, the jury must make affirmative findings shown on the record that cannot logically or legally exist at the same time.[25]

In this case, the State charged Olushola with one count of robbery by force by taking Dillon's purse, including her credit cards, from her presence by force. The jury returned a guilty verdict as to this count. The State also charged Olushola with exploitation or intimidation of an elder person for "wilfully inflicting physical pain on . . . Dillon . . . by striking her," and the jury acquitted Olushola of this count. The trial court denied Olushola's amended motion for new trial as to this issue, finding that the verdict on these two counts was not repugnant. We agree.

In this case, the jury's acquittal as to the elder abuse count and conviction for robbery by force are not facially inconsistent based on the indictment language, much less repugnant.[26] For instance, the jury could have believed that Olushola took

---

[25] (Citations and punctuation omitted.) *Davis v. State*, 370 Ga. App. 439, 441 (1) (896 SE2d 612) (2023), citing *McElrath*, 308 Ga. at 108 (2); *State v. Owens*, 312 Ga. 212, 217 (1) (b) (862 SE2d 125) (2021).

[26] See *Davis*, 370 Ga. App. at 442 (1).

Dillon's purse by force but did not believe that he struck her.[27] Accordingly, this enumeration is without merit.

4. Finally, Olushola asserts that the trial court abused its discretion by allowing evidence of other acts pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)") in order to prove his identity[28] because it was not relevant to that purpose and instead constituted propensity evidence. We disagree.

> Rule 404 (b) permits the admission of evidence of other crimes, wrongs, or acts for purposes other than to prove character. It explicitly recognizes the relevance of other acts evidence offered for a permissible purpose[29] and, at the same time, prohibits the admission of such evidence when it is offered solely for the impermissible purpose of showing a defendant's bad character or propensity to commit a crime. In determining whether to admit other acts evidence under Rule 404 (b),

---

[27] See id.

[28] In its order denying Olushola's motion for new trial, the court found that the evidence was intrinsic and therefore admissible regardless of whether it erred by admitting the evidence to show identity. See *Roberts v. State*, 315 Ga. 229, 235-238 (2) (880 SE2d 501) (2022) ("[E]vidence is considered intrinsic to the charged offense when it is '(1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense.'").

[29] Permissible purposes include "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See OCGA § 24-4-404 (b).

18

the trial court must examine whether (1) the other acts evidence is relevant to an issue other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 ('Rule 403'), and (3) there is sufficient proof that a jury could find by the preponderance of the evidence that the defendant committed the acts. . . . We will affirm the trial court's decision to admit other acts evidence absent a clear abuse of discretion.[30]

(a) Because Olushola challenged the State's case for presenting only circumstantial evidence of identity, the State sought and the trial court allowed evidence of the Gwinnett robbery to be presented to the jury. Olushola contends this was an abuse of discretion because the incidents were not unique or distinguishable such that they could constitute a "signature crime" in order for the Gwinnett robbery to be allowed for the purposes of identity.[31] Olushola explains that during the Gwinnett incident, he is alleged to have driven up to Gray, whom he attempted to engage in conversation before robbing her, while during the Cobb incident, he is alleged to have robbed Dillon as she existed her vehicle without any warning or conversation. We are not persuaded.

---

[30] (Citations and punctuation omitted.) *Tariq-Madyun v. State*, 361 Ga. App. 219, 223-224 (3) (863 SE2d 703) (2021).

[31] See *Moon v. State*, 312 Ga. 31, 53-54 (3) (c) (iii) (860 SE2d 519) (2021).

Olusola, in the span of two weeks, used his recently purchased and distinctively damaged vehicle to approach lone women in parking lots to snatch by force their visible purses from their hands, injuring them in the process before quickly fleeing the scene in his vehicle.[32] That Dillon was not accosted prior to being robbed is not a sufficient difference in the incidents to require a finding that the trial court abused its discretion in allowing the evidence of the Gwinnett robbery.

Olushola also argues that even if the incidents were sufficiently unique and similar for the Gwinnett incident to be admitted in the Cobb proceeding, the trial court abused its discretion by allowing the evidence because its prejudicial impact substantially outweighed the probative value to the jury.[33] In this context, however,

---

[32] See *Martin v. State*, 340 Ga. App. 773, 774-775 (1) (798 SE2d 326) (2017) (explaining that it was not an abuse of discretion to admit other act evidence when both incidents occurred within a month of each other and involved the robbery of purses from single women walking alone, with similar weapons and the same vehicle). See also *Brannon v. State*, 298 Ga. 601, 607 (4) (783 SE2d 642) (2016) (holding that car hijacking incidents were sufficiently similar for admission of one to show identity under Rule 404 (b) because they involved the same accomplices, same getaway cars, and same victims driving vehicles with "distinctive rims," and they occurred within 13 days of each other).

[33] See, e.g., *Hood v. State*, 299 Ga. 95, 101-102 (4) (786 SE2d 648) (2016) (holding that the trial court abused its discretion by allowing testimony that witnesses had purchased prescription pain medication from the defendant on the basis that the prejudice to the defendant outweighed the probative value because the defendant

"unfairly prejudicial, mean[s that] it had an 'undue tendency to suggest a decision based on an improper basis.'"[34] "Rule 403 is an extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility. Thus, in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact."[35] "[G]iven its strong probative value, [this] . . . evidence was not the evidence of 'scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect[.]'"[36] Based on the similarities of the incidents in question as well as the evidence presented in support of the Cobb incident as summarized above, the trial court did not abuse its discretion by admitting this evidence. Accordingly, this argument is without merit.

offered to stipulate that he committed the charged crime of possessing the medication with intent to distribute, but also holding that the error in admitting the evidence was harmless).

[34] Id. at 105 (4).

[35] (Punctuation omitted.) *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017), quoting *United States v. Edouard*, 485 F3d 1324, 1344, n. 8 (II) (C) (11th Cir. 2007).

[36] *Roberts*, 315 Ga. at 238 (2) (b). See also *Brannon*, 298 Ga. at 608 (4) (evidence should not have been excluded under Rule 403 because of its centrality to the prosecution's case).

(b) Based on this conclusion, we need not address whether the Gwinnett robbery was properly admitted as intrinsic evidence.

*Judgment affirmed. Hodges and Watkins, JJ., concur.*